[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 400 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 401 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 402 
OPINION
This is an appeal from summary judgment entered against plaintiffs in an action in inverse condemnation, continuing nuisance, and dangerous condition of public property, arising from subsidence-related damage to real property alleged to be the result of defective sewage and drainage systems of defendant City of San Mateo. Summary judgment was granted on the ground that plaintiffs' suit was barred by the 10-year statute of limitations, Code of Civil Procedure, section 337.15, protecting developers of real estate from unlimited claims for property damage caused by latent construction defects.
The trial court also found that by virtue of a previous lawsuit arising out of the same subsidence problem, plaintiffs knew or should have *Page 403 
known the existence of facts giving them a cause of action against the defendant.
Upon granting the summary judgment, the court also granted the demurrer without leave to amend of cross-defendant San Mateo Investment Company because no cause of action was stated.
In January of 1972 the appellants, Ron and Ellen Leaf, purchased a parcel of real property, which included a duplex, in the City of San Mateo. The duplex is believed to have been constructed in 1963, and sold upon completion to the initial owners in June 1963. Final completion and acceptance of the subdivision is believed to have occurred in 1965.
Shortly after occupying their duplex in June 1972, the Leafs discovered that some of the floors were not level, and that there were some cracks in the exterior of the building. The Leafs consulted with two different engineering firms, the first in August 1972 and the second in July 1973, the consensus being that the structural problems were being caused by differential settlement and subsidence due to movement of the fill on plaintiffs' lot caused by water absorption. The problem was symptomatic on the south side of plaintiffs' duplex, and the only test borings were made on that side of plaintiffs' property. It was recommended that a subsurface drainage system be installed to stop the subsidence and that the structure be restored to a level condition approximately one year after drainage installation.
The Leafs attempted to secure a settlement from San Mateo Investment Company, the developer/builder, and when negotiations failed brought an action (hereinafter referred to as Suit I) in January 1974 against San Mateo Investment Company, the sellers, and various engineers and contractors. The action sought recovery from the original developers on the basis of defective engineering and manufacture of plaintiffs' lot pad and against the former owners for fraud and nondisclosure. The City of San Mateo was not named in Suit I. A settlement was reached in June 1976.
With the proceeds of the settlement, plaintiffs began construction of the recommended drainage system in August 1976. While excavating in the vicinity of City of San Mateo's sewers, a cave-in occurred exposing a previously excavated sewer trench. Subsequent investigation *Page 404 
revealed that back-fill in the City of San Mateo's storm and sanitary sewer trenches on and near plaintiffs' property had not been compacted, and that the trenches were acting as subterranean water channels which were funneling water onto plaintiffs' property. Investigation also showed that the section of the sanitary sewer main extending in an easement along the north side of plaintiffs' home was located too close to the foundation, and that its close proximity, combined with lack of compaction of the material in that portion of the trench, was resulting in the north side of the building being deprived of lateral and subjacent support.
When the City of San Mateo refused to take action to correct the alleged defective condition of its property a claim was filed against it on November 5, 1976, and plaintiffs filed this action (hereinafter referred to as Suit II) on January 28, 1977, alleging inverse condemnation, continuing nuisance, and a dangerous and defective condition of public property.
The city first raised the 10-year statute of limitations in June 1977 by demurrer to the first amended complaint; the demurrer was overruled. Defendant raised the statute again in January 1979 by way of a motion for summary judgment and the motion was granted.
We are of the opinion, for the reasons we now state, that the judgment should be reversed.
(1) At the hearing on summary judgment the defendant City of San Mateo urged, and the court held, that Code of Civil Procedure section 337.15 barred this action because it was brought more than 10 years after the date of completion of the construction of the duplex.[1] The purpose *Page 405 
of the 10-year statute is to protect developers of real estate against liability extending indefinitely into the future. (Regents of University of California v. Hartford Acc. Indem.Co. (1978) 21 Cal.3d 624, 633, fn. 2 [147 Cal.Rptr. 486,581 P.2d 197].) Section 337.15 does not protect persons in actual possession or control, as owner or otherwise, of the offending property at the time of the proximate cause of the injury. (Code Civ. Proc., § 337.15, subd. (e); Regents of University ofCalifornia, supra, at p. 632; Eden v. Van Tine (1978)83 Cal.App.3d 879, 885-886 [148 Cal.Rptr. 215].) Defendant city was in possession and control of the storm and sanitary sewer easements on and near plaintiffs' property. Therefore, City of San Mateo was not within the protected class, specifically developers, which was intended by this statute.
The trial court was in error in holding that the City of San Mateo, an owner in possession and control, was insulated from liability by section 337.15
Defendant, while not completely abandoning the theory that section 337.15 insulates it from liability, urges that, even if the trial court erred in its reasoning, it made the correct decision, and therefore should be affirmed, citing Smith v.Walter E. Heller Co. (1978) 82 Cal.App.3d 259 [147 Cal.Rptr. 1], and cases cited therein; 6 Witkin, California Procedure (2d ed. 1971) Appeal, section 226, pages 4215-4216. Defendant contends that summary judgment was proper because either: 1) other applicable statutes of limitations bar plaintiffs from maintaining Suit II; or 2) Suit I and Suit II are identical and therefore "fundamental rules of pleading" bar Suit II; or 3) the releases executed by plaintiffs in Suit I acted to release defendant City of San Mateo.
Whether or not plaintiffs' claim is barred by some other applicable statute of limitations[2] is dependent upon a determination of when the *Page 406 
cause of action accrued. The question of when plaintiffs' cause of action accrued is a mixed question of law and fact. (Avner
v. Longridge Estates (1969) 272 Cal.App.2d 607, 617 [77 Cal.Rptr. 633]; Oakes v. McCarthy Co. (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127].)
(2a) Defendant in this action takes the position that plaintiffs' cause of action accrued when plaintiffs became aware of the damage to their property, i.e., when they noticed the unlevel floors and cracks in the building exterior. Plaintiffs, on the other hand, urge the "rule of discovery," which would start a statute running only when plaintiffs not only were aware of the damage, but became aware of its negligent cause, i.e., at the time of the cave-in.
(3) The traditional rule in tort cases is that the statute of limitations begins to run upon the occurrence of the last fact essential to the cause of action. Although sometimes harsh, the fact that plaintiff is neither aware of his cause of action nor of the identity of a wrongdoer will not toll the statute. (Saliter v. Pierce Brothers Mortuaries (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271]; Neel v. Magana, Olney, Levy,Cathcart Gelfand (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837,491 P.2d 421]; Howe v. Pioneer Mfg. Co. (1968) 262 Cal.App.2d 330, 340 [68 Cal.Rptr. 617].)
The harshness of this rule has been ameliorated in some cases where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured. This modified rule has been *Page 407 
applied to latent defects in real property and improvements. (Regents of University of California v. Hartford Acc. Indem.Co., supra, 21 Cal.3d 624; Mehl v. People ex rel. Dept.Pub. Wks., supra, 13 Cal.3d 710; Oakes v. McCarthy Co.,supra, 267 Cal.App.2d 231; Aced v. Hobbs-Sesack Plumbing Co.
(1961) 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897].) In the case of such latent defects the statute of limitations begins to run only when "noticeable damage occurs." (Oakes, supra, at p. 254.)
Oakes, a case specifically dealing with consequential damages resulting from underground trespass, held that a cause of action accrues when the surface damage is "sufficiently appreciable to a reasonable man." (Oakes, supra, at p. 255.) This standard was adopted by Regents of University of California v. HartfordAcc. Indem. Co., supra; Mehl v. People ex rel. Dept. Pub.Wks., supra; and Amador Valley Investors v. City ofLivermore (1974) 43 Cal.App.3d 483 [117 Cal.Rptr. 749], all involving negligent injury to realty, and by Aced v.Hobbs-Sesack Plumbing Co., supra, involving a breach of warranty for leaky tubing installed in a concrete slab floor. It is the standard urged by defendant City of San Mateo in this action.
Plaintiffs urge that this court apply the "rule of discovery" in lieu of the standard articulated in Oakes. Although it has been said that a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action (Saliter v. Pierce BrothersMortuaries, supra, at p. 296; Cain v. State Farm Mut. Auto.Ins. Co. (1976) 62 Cal.App.3d 310, 314 [132 Cal.Rptr. 860];Neel v. Magana, Olney, Levy, Cathcart Gelfand, supra, at p. 190), this has been interpreted under the discovery rule to be when "plaintiff either (1) actually discovered his injury andits negligent cause or (2) could have discovered injury andcause through the exercise of reasonable diligence [italics added]." (Sanchez v. South Hoover Hospital (1976) 18 Cal.3d 93, 96-97 [132 Cal.Rptr. 657, 553 P.2d 1129]. See also Enfield
v. Hunt (1979) 91 Cal.App.3d 417, 419 [154 Cal.Rptr. 146];Cain v. State Farm Mut. Auto. Ins. Co., supra, at p. 314;G.D. Searle Co. v. Superior Court (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218]; Allred v. Bekins Wide World VanServices (1975) 45 Cal.App.3d 984, 991 [120 Cal.Rptr. 312].)
The "rule of discovery" has been extended in the tort area to include all of the following: Sanchez v. South HooverHospital, supra (action *Page 408 
for injury or death against a health care provider under Code Civ. Proc., § 340.5); Neel v. Magana, Olney, Levy, Cathcart Gelfand, supra (attorney malpractice); Manguso v. OceansideUnified School Dist. (1979) 88 Cal.App.3d 725 [152 Cal.Rptr. 27] (action for damages for libel); Seelenfreund v. Terminix ofNorthern Cal., Inc. (1978) 84 Cal.App.3d 133 [148 Cal.Rptr. 307] (negligent breach of oral contract to make a termite inspection and report); Saliter v. Pierce Brothers Mortuaries, supra
(personal injury based on negligent breach of contract); Cain
v. State Farm Mut. Auto Ins. Co., supra (violation of right to privacy); G.D. Searle Co. v. Superior Court, supra
(personal injury based on products liability); Allred v.Bekins Wide World Van Services, supra (personal injury and damage to personal property resulting from negligent breach of contract to ship personal property); Warrington v. CharlesPfizer Co. (1969) 274 Cal.App.2d 564 [80 Cal.Rptr. 130] (personal injury from negligently manufactured or marketed drugs); Moonie v. Lynch (1967) 256 Cal.App.2d 361
[64 Cal.Rptr. 55] (accountant's malpractice).
The discovery rule operates to protect the plaintiff who is "blamelessly ignorant" of his cause of action. (Frederick v.Calbio Pharmaceuticals (1979) 89 Cal.App.3d 49, 53-54 [152 Cal.Rptr. 292]; G.D. Searle Co. v. Superior Court, supra,
at p. 25.) Accordingly, we do not think that plaintiffs' cause of action in this case should accrue from the occurrence of the last essential fact, nor from discovery of the damage to their property, as defendant contends, but rather from the point in time when plaintiffs became aware of defendant's negligence as a cause, or could have become so aware through the exercise of reasonable diligence.
The ultimate question therefore is whether plaintiffs exercised reasonable diligence in discovering the negligent cause of their injuries. (Enfield v. Hunt, supra, 91 Cal.App.3d, at p. 423.) We see no reason to commence the running of the statute of limitations when plaintiffs, at the outset, made reasonable, but unsuccessful, efforts to identify the negligent cause of damage. Where, as in this case, plaintiffs consulted with professional engineers as to the source of their injury, they were entitled to rely upon that advice. (See, Enfield v. Hunt, supra; Jones v.Queen of the Valley Hospital (1979) 90 Cal.App.3d 700, 703 [153 Cal.Rptr. 662].) It would be contrary to public policy to require that plaintiffs file a lawsuit against City of San Mateo at a time when the evidence available to them failed to indicate a cause of action against *Page 409 
this defendant. (Enfield v. Hunt, supra, at p. 424; Jones
v. Queen of the Valley Hospital, supra, at p. 703.)
(2b) Thus, under the facts alleged by plaintiffs, their cause of action against the City of San Mateo would have accrued at the time of the cave-in of the sewer trench.
Whether plaintiffs in fact exercised reasonable diligence in discovering the negligence of defendant City of San Mateo is a question of fact (Enfield v. Hunt, supra, at p. 419), but we cannot find, as the trial court did, that as a matter of law plaintiffs' previous lawsuit put them on notice of their cause of action against the City of San Mateo.
(4a) It is defendant's contention that plaintiffs' Suit I against the developers and sellers precluded plaintiffs' Suit II against the City of San Mateo. It claims that the second suit is identical to the first, except insofar as the City of San Mateo is named as a defendant, and that "fundamental rules of pleading" bar the second suit.
We do not agree that the two suits are identical, but assuming arguendo that this were so, there is no rule of law requiring plaintiffs to have joined all defendants in one lawsuit. (5)
Joint, concurrent or successive tortfeasors may be sued separately or jointly at plaintiff's option. (Helling v. Lew
(1972) 28 Cal.App.3d 434, 438 [104 Cal.Rptr. 789]; Skelly v.Richman (1970) 10 Cal.App.3d 844, 857 [89 Cal.Rptr. 556];Williams v. Reed (1952) 113 Cal.App.2d 195, 204 [248 P.2d 147]; Fowden v. Pacific Coast Steamship Co. (1906) 149 Cal. 151, 157 [86 P. 178]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 141, p. 1815; § 169, p. 1844.)
In the instant case, plaintiffs clearly could have filed two separate lawsuits at the time they filed the first suit in 1974. They would not have been compelled by rules of pleading to join the defendant, City of San Mateo, in the prior action.
(4b) However, the suit against the sellers and developers, and the suit against defendant City of San Mateo, are not identical as defendant claims. Plaintiffs, in Suit I, sued the developers for damage to their property on theories of defective engineering and manufacture and the sellers on theories of fraud and nondisclosure. Recovery against the City is being sought for inverse condemnation, continuing nuisance, and *Page 410 
a dangerous and defective condition of public property. Suit I was premised on the liability of the developers and sellers for the condition of plaintiffs' property in July 1972. In contrast, Suit II is premised on the liability of the City for a present condition of its property which not only contributed to the property damage of which plaintiffs were previously aware, but which plaintiffs allege has independently caused them damage in the form of tripled or quadrupled cost of repair.[3]
(6) Finally, defendant contends that the releases executed by the plaintiffs in Suit I worked as a prospective release as to "all others," including defendant in Suit II, City of San Mateo. The two releases executed by the plaintiffs in compromising Suit I are both printed forms with fill-in blanks. Both purport to release the named defendants in Suit I "and all others" from all claims arising out of the subsidence damage occurring in July 1972. Both releases contain printed boiler plate language waiving all rights of plaintiffs under Civil Code, section 1542, whereby a general release does not extend to claims not known or suspected to exist.
In support of their contention, defendant cites 12 California Jurisprudence Third 403, Compromise, Settlement, and Release, section 93, which reads: "A release naming certain persons to be released and including all other persons connected with thetransaction is operative as to all persons connected therewith. Furthermore, a release may be effective as against successors ininterest and others who were not immediate parties to it.
[Italics added.]"
We have no quarrel with the quoted passage, but point out that such a release is only operative as to "all other personsconnected with the transaction." Such a release cannot be interpreted to operate as to a separate and distinct cause of action against a successive, independent wrongdoer. (Lamoreux
v. San Diego etc. Ry. Co. (1957) 48 Cal.2d 617, 624 [311 P.2d 1] (employer and negligent third party); Ash v. Mortensen
(1944) 24 Cal.2d 654, 658-659 [150 P.2d 876] (aggravation of injuries by medical malpractice).) *Page 411 
Furthermore, mere recital, as in the release signed by plaintiffs, that the protection of Civil Code section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling. Whether the releaser intended to discharge such claims or parties is ultimately a question of fact. (Grebe v. McDaniel (1968) 265 Cal.App.2d 901, 903 [71 Cal.Rptr. 662]; Casey v. Proctor (1963) 59 Cal.2d 97, 110 [28 Cal.Rptr. 307, 378 P.2d 579].)
We therefore reverse the summary judgment entered in this action, plaintiffs to recover their costs on appeal from defendant City of San Mateo. Insofar as the demurrer of cross-defendant San Mateo Investment Company was granted on the grounds that no cause of action was stated, it cannot be definitely ascertained from the record that the demurrer was not sustained because the cross-complaint had been mooted by the grant of summary judgment. Therefore, the judgment of dismissal in favor of cross-defendant San Mateo Investment Company is reversed, cross-complainant City of San Mateo to bear its own costs on appeal.
Taylor, P.J., and Rouse, J., concurred.
[1] Code of Civil Procedure, section 337.15 reads as follows: "(a) No action may be brought to recover damages from any person who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of such development or improvement for any of the following:
"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.
"(2) Injury to property, real or personal, arising out of any such latent deficiency.
"(b) As used in this section, `latent deficiency' means a deficiency which is not apparent by reasonable inspection.
"(c) As used in this section, `action' includes an action for indemnity brought against a person arising out of his performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to Section 442 in an action which has been brought within the time period set forth in subdivision (a) of this section.
"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action.
"(e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in such improvement constitutes the proximate cause for which it is proposed to bring an action.
"(f) This section shall not apply to actions based on willful misconduct or fraudulent concealment."
[2] The applicable statute of limitations for injury to real property is three years. (Code Civ. Proc., § 338, subd. 2.)
In the case of the continuing nuisance, "every repetition of the wrong may create further liability." (Nestle v. City ofSanta Monica (1972) 6 Cal.3d 920, 937 [101 Cal.Rptr. 568,496 P.2d 480].) Where the cause of action is one for destruction of lateral support, a new and separate cause of action arises with each new subsidence and any applicable limitations statute runs separately for each separate subsidence. (Bellman v. County ofContra Costa (1960) 54 Cal.2d 363, 369 [5 Cal.Rptr. 692,353 P.2d 300].)
The cases are divided on the application of a three-year or five-year statute of limitations for actions in inverse condemnation. (Mehl v. People ex rel. Dept. Pub. Wks.
(1975) 13 Cal.3d 710, 717, fn. 3 [119 Cal.Rptr. 625,532 P.2d 489].) The three-year statute is Code of Civil Procedure, section338, subd. 2 for trespass and injury to real property. Frustuck
v. City of Fairfax (1963) 212 Cal.App.2d 345, 373-375 [28 Cal.Rptr. 357] espouses a five-year statute of limitations on the rationale that, "[T]he owner's right of recovery is founded upon and grows out of his title to land and that until such title is lost by adverse possession the owner should have the right to maintain an action to recover that which represents the property itself." (Frustuck, supra, at p. 374; see also Garden WaterCorp. v. Fambrough (1966) 245 Cal.App.2d 324 [53 Cal.Rptr. 862] .) One case, Ocean Shore R.R. Co. v. City of Santa Cruz
(1961) 198 Cal.App.2d 267 [17 Cal.Rptr. 892], held that both the three-year and five-year statutes of limitations were applicable to an action in inverse condemnation.
[3] Plaintiffs allege that the defective condition of defendant's property has severely aggravated their repair costs, in that the uncompacted sewer trenches necessitated redesign and partial reconstruction of the original drainage system. Furthermore, plaintiffs claim that as a result, the redesigned system could not be placed at a sufficient depth to completely stop the subsidence, and additional costly measures have been taken in an attempt to mitigate the damage from this ongoing subsidence. *Page 412