[No. F042811. Fifth Dist. May 20, 2004.]

JAMES A. SIEGEL et al., Plaintiffs and Appellants, v.
ANDERSON HOMES, INC., Defendant and Respondent.

**COUNSEL**

Law Offices of Keith C. Rickelman and Keith C. Rickelman for Plaintiffs and Appellants.

Brunn & Flynn, Roger S. Matzkind; Marderosian, Runyon, Cercone, Lehman & Armo and Brett L. Runyon for Defendant and Respondent.

## OPINION

**BUCKLEY, Acting P. J.**— ■ The owner of a home containing latent construction defects may maintain an action in tort against the builder for any resulting damages. But when there are several successive owners, to which of them does the cause of action belong: to the person who owns the home when the structure first sustains some appreciable but undetected harm, or to the subsequent owner who first discovers the harm? Put another way, does the cause of action accrue when the *structure* suffers physical damage, or when the *owner* suffers a compensable economic injury as a result? Has the owner suffered an injury, for example, if he or she is unaware the wooden framing within the walls is slowly deteriorating from water damage?

This is a construction defects action brought by James A. Siegel and Louis Sanchez, the subsequent owners of homes built by Anderson Homes, Inc. (Anderson), alleging the homes contained numerous preexisting defects, and structural damage, which they discovered only after having purchased the homes. Anderson moved in limine to exclude evidence of the defects and the damage on the ground they had given rise to causes of action in the original owners such that, absent an assignment of rights by the original owners to them, Siegel and Sanchez each lacked "standing" to bring the action. The trial court, in reliance on *Krusi v. S.J. Amoroso Construction Co.* (2000) 81 Cal.App.4th 995 [97 Cal.Rptr.2d 294] (*Krusi*), granted the motion and dismissed the complaint.

■ We will conclude that, absent proof the original owners suffered actual economic injuries as a result of the construction defects (a factual issue properly left for trial), they possessed no causes of action against Anderson that precluded Siegel and Sanchez from maintaining their present claims. Accordingly, we will reverse the trial court's dismissal of the claims.

### FACTS AND PROCEEDINGS

Siegel and Sanchez filed their complaint on March 8, 2000, against Anderson and several fictitiously named Doe defendants who were alleged to have been involved in the development, construction, and/or sale of their homes.[1] The complaint asserted causes of action for strict liability, negligence, private and public nuisance, and breach of implied warranty. We are concerned here only with the first two of these.

The complaint alleged the two men's houses contained numerous construction defects that "were neither known to [them] nor apparent by reasonable

---

[1] It seems Anderson later filed cross-complaints against some of the subcontractors involved in the construction of the homes, including Ace Lathing, Inc., which requested permission to file a co-respondent's brief in this appeal. We granted the request.

inspection" when they purchased the houses, and which defects "caused property damage from the date of construction to the present date."

These allegations, as focused over the next 18 months by the discovery process and by the in limine motion, were directed in particular to claims by Siegel and Sanchez that the chimneys, roofs, windows, and stucco siding on their houses had been installed improperly, such that water leaked into the roof and walls when it rained. Thus it was agreed, at least for purposes of the question now before us, that damage to the structures began to occur immediately after the first rain following the completion of construction, i.e., well before either Siegel or Sanchez owned his house.

Moreover, the discussion of the in limine motion proceeded on the assumption the structural damage was cumulative and progressive; that it was not outwardly apparent or reasonably discoverable except by an intrusive inspection of the roof and walls; that the prior owners had not been aware of the defects or the damage, and so had not disclosed them to Siegal and Sanchez; and thus that it was Siegel and Sanchez who first discovered both.[2]

Anderson's in limine motion No. 4, which it filed in October of 2001, sought to preclude Siegel and Sanchez from offering any evidence "pertaining to any defects or damages" in their homes existing prior to their ownership. The motion was based on the ground they lacked, as a matter of law, "standing to assert any claims" arising from such preexisting defects.

The matter came to a hearing on February 13, 2003, and soon turned to the issue of whether a cause of action for latent construction defects accrues when some significant structural damage occurs, or when the owner discovers (or should discover) the damage.[3] Anderson took the former position on the strength of the *Krusi* decision. The trial court agreed, and continued the hearing so Siegel and Sanchez could confer with their expert and prepare an offer of proof, if possible, showing they had suffered a new and different type of damage to their homes after purchasing them. This they were not able to do.

---

[2] Evidence offered by the parties in connection with the motion indicates the houses had been poorly maintained and were in need of various repairs when Siegel and Sanchez bought them. These problems were disclosed as part of the sale. In addition, Siegal paid less for his house than its original sale price, and Sanchez's purchase agreement expressly provided that he was taking his house as is. Anderson contends this evidence shows the defects and damages that are the subject of this action were known or discoverable before Siegel and Sanchez took ownership. These, however, are questions of fact to be decided at trial. (*Krusi, supra*, 81 Cal.App.4th at p. 1006.) Moreover, as will appear, the legal theory upon which the trial court based its ruling in this case looks only to when damage occurred, regardless of when it became known or discoverable.

[3] Anderson filed a motion the same day for judgment on the pleadings, asserting the same grounds as those raised in its in limine motion.

At the continued hearing on February 18, Siegel and Sanchez offered a declaration by their expert, Norbert Lohse, in which he expressed his opinion the structural damage to their homes had begun to occur upon the completion of construction, but the damage had not been (and could not have been) discovered except by the type of intrusive testing he conducted after their purchase of the homes. On this basis, Siegel and Sanchez argued again that it is the discovery, not the occurrence, of structural damage that causes a claim for construction defects to accrue. The court rejected this argument, with the following explanation.

"THE COURT: Now, here's the problem I have. I read the declaration, and Mr. Lohse's statement is consistent with his deposition testimony, that the damage began to accrue mostly after the start of the first rains after construction was completed.

"So the problem then is the Court is going to think outloud [*sic*] and share thoughts with you and invite argument or comments. Because when I look at this, the overall statutory scheme of the law on construction defects, whether based on negligence or strict liability against the developer/builder, the overall statutory scheme sets forth a ten year statute of limitations for latent defects. [¶] . . . [¶]

". . . [T]he language [in *Krusi*] that is involved here appears on page 1006, and it holds in essence, 'A subsequent purchaser/owner of property lacks standing to sue for property damage suffered unless it is fundamentally different from the earlier time.'

"And then it says, 'But if that condition goes unremedied for a period of years, owners two and three of the same building have no such right of action against the original builder/developer unless it was specifically transferred to them presumably by an assignment.'

"So [*Krusi*] comes along and says, 'That a subsequent owner, even if he is unaware of the present defect, cannot bring a cause of action unless the damage was substantially or fundamentally different than that which had been sustained during the time that the prior owners had it.'

"Essentially saying that there is only one cause of action per building, and it depends on when it accrues, or there is only one cause of action per building per type of damage, and that cause of action accrues when that defect starts to cause property damage. And so then it just happens to be whoever owns the property at that time regardless of whether or not it's a latent defect.

"So in essence, [*Krusi*] attempts to rewrite a statute of limitations, which says once the property is sold to a subsequent owner, and if the defect had

caused damage prior to that time, even though it was latent, and no one knew about it because maybe it was in the interior walls or it was in the sheathing of the roof or wherever, and could not be discovered by reasonable inspection, the act of conveying the property to a subsequent owner limits liability of the developer/contractor. That is why the Court has a problem and philosophically may disagree with the [*Krusi* case], strongly disagree with it. But it is the law. That is what the Court of Appeals [*sic*] has said.

"Now, that is one problem that I had. The other problem that I had with the [*Krusi* case] is they say that you cannot have ongoing—in other words, you cannot have a cause of action that accrued to the original owner, pass to a subsequent owner, without a written assignment, even if it's a latent defect.

"I'm not sure I agree with that, but that is what [*Krusi*] holds. Okay. This does not seem logical in light of the overall statutory scheme. It also seems to defy the general principle that the law clearly recognizes the right of a subsequent owner to bring a cause of action against the original developer/builder. That cause of action has been recognized for a long time. The [*Krusi* case] really limits it.

"MR. RICKELMAN [representing Siegel and Sanchez]: It obliterates it.

"THE COURT: No. It doesn't obliterate it. I disagree. But the circumstances under which it would exist would be limited to: One, having a defect at the time of construction because that's the only way you can bring the cause of action against the owner/builder [*sic*, the developer/builder?]. Number two, the defect is latent and does not cause property damage for a period of time, and then years down the road when the subsequent owner purchases the property, now the property damage arises.

"MR. RICKELMAN: It's discovered.

"THE COURT: That's the only cause of action which can be maintained by a subsequent property owner, and that just seems to be inconsistent with the statutory scheme regarding causes of action. You can maintain a cause of action whether you're an owner or subsequent owner for latent defects up to ten years following completion of construction. And so you're talking about judicial activism.

"It's the law. I mean, it's the case law. I'm just a lowly superior court judge looking at this issue. You see the problem I'm having . . . ."

After some further discussion, the court granted Anderson's motion in limine, thus effectively disposing of Siegel's and Sanchez's claims for strict

liability and negligence (on the ground the claims failed to state a cause of action against Anderson). Siegel and Sanchez then agreed to dismiss their two nuisance claims, and to "waive" their claim for breach of implied warranty. Accordingly, the court, in an order issued March 13, 2003, dismissed the complaint and entered judgment in favor of Anderson. Siegel and Sanchez filed a timely notice of appeal.

## DISCUSSION

■ As the trial court's comments show, its ruling was based entirely on a question of law: Does a cause of action for latent construction defects accrue when the defects cause some appreciable structural damage (even if the damage is not apparent), or does it accrue when the owner discovers the damage? We will assume for purposes of deciding this question, as the trial court did, that the damage in this case occurred before, and the discovery occurred after, Siegel and Sanchez purchased their houses. As there are thus no facts in dispute, we review the court's ruling de novo. (*Aas v. Superior Court* (2000) 24 Cal.4th 627, 634–635 [101 Cal.Rptr.2d 718, 12 P.3d 1125] [ruling on in limine motion to exclude all evidence on a claim is subject to independent review inasmuch as motion is functional equivalent of motion for judgment on the pleadings or, if decided in light of evidence produced during discovery, a motion for nonsuit].)

The court ruled a cause of action for construction defects "accrues when that defect starts to cause property damage," and so belongs to "whoever owns the property at that time[,] regardless of whether or not it's a latent defect." As a consequence, the court noted, if the rule applies, "the act of conveying the property to a subsequent owner limits [the] liability of the developer/contractor" (because a cause of action that accrued to the original owner is personal and does not pass to the subsequent owner except by way of an assignment). The court based its ruling on *Krusi, supra*, 81 Cal. App.4th 995. The *Krusi* court, in turn, based its decision on several earlier construction defect cases. We begin by discussing those earlier decisions.

In *Huang v. Garner* (1984) 157 Cal.App.3d 404 [203 Cal.Rptr. 800] (*Huang*), Huang was the fourth owner of an apartment building constructed by Garner's company. Upon his purchase of the building, Huang hired an engineer to determine what would need to be done to convert the apartments to condominiums. This led to the discovery of what Huang would allege, in a subsequent suit against Garner and others, was extensive structural damage to the building caused by various construction and design defects. Following judgment in his favor for physical damages to the property, Huang challenged the trial court's granting of a partial nonsuit denying recovery for economic harm. The appellate court reversed the partial nonsuit after concluding that

the developer of a defective building may, in some circumstances, be found liable to a third party purchaser for economic losses. (*Id.* at pp. 419–425; but see *Aas v. Superior Court, supra,* 24 Cal.4th at p. 649 [disapproving *Huang* on this point].) Although the court did not discuss the question of when a cause of action for construction defects accrues, Huang plainly would have lacked "standing" to sue Garner under the "accrual at the time of property damage" rule adopted by the court in the present case.

Nor was the time of accrual specifically an issue in *Sumitomo Bank v. Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211 [229 Cal.Rptr. 719] (*Sumitomo Bank*). Sumitomo Bank loaned Taurus money to construct a condominium project, Taurus defaulted on the loan, and the bank purchased the property at the trustee's sale for the amount of Taurus's outstanding debt. The bank then discovered what it would allege were latent defects in the property that had caused $400,000 in damages, and it sued Taurus on several theories, including negligence. The court dismissed the complaint after sustaining Taurus's demurrers to all causes of action without leave to amend. The issue on appeal as to the negligence cause of action was whether the lack of contractual privity between the bank and Taurus on the sale of the property cut off Taurus's potential liability for the construction defects. The appellate court held it did not. (*Id.* at pp. 224–226.)[4] Here again however, as in *Huang,* there was no suggestion that anything other than discovery caused the negligence cause of action to accrue (and, indeed, there had been no intervening owners in which it might have accrued).

The question in *Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144 [272 Cal.Rptr. 261] (*Vaughn*) was whether the party in whom a cause of action for construction defects has accrued loses standing to maintain the action if she later sells the property. Vaughn sold her condominium shortly after suing the builder for damages she allegedly had suffered as a result of its defective construction. The builder then moved for, and the trial court granted, summary judgment on the ground Vaughn had lost her standing to sue. The appellate court reversed.

"While ordinarily the owner of the real property is the party entitled to recover for injury to the property, the essential element of the cause of action is injury to one's interests in the property—ownership of the property is not . . . . Since it was [Vaughn's] interest in the property which was injured by [Dame's] defective construction, she is the owner of the cause of action entitled to maintain the present action.

"While [Dame] apparently does not dispute that [Vaughn] *was* the real party in interest at the time the action was filed, [Dame] contends that the sale

---

[4] The court also held that the presence of an "as is" clause in the trustee's deed did not bar Sumitomo's negligence cause of action. (*Sumitomo Bank, supra,* 185 Cal.App.3d at p. 224.)

of the property automatically transfers the right to recover for the injury which undeniably occurred to [Vaughn] . . . .

"The *cause of action* for damages as a result of injury to property, which was fully vested in plaintiff at the time of the injury, is personal property—not real property. (Civ. Code, § 953: 'A thing in action is a right to recover money or other personal property by a judicial proceeding'; see also Civ. Code, § 14, subd. 3; Code Civ. Proc., § 17, subd. 3.) The right to recover damages for injury to property, being personal property, may be assigned or transferred. (Civ. Code, § 954: 'A thing in action, arising out of the violation of a right of property . . . may be transferred by the owner'; [citation].) There is no authority, however, for the proposition that the transfer of the real property automatically transfers plaintiff's personal cause of action . . . .

". . . No one other than [Vaughn] can recover for the damages she sustained as owner of the property at the time the injury occurred. The fact that the property was sold after the damage occurred does not mean the new owners are now the parties entitled to recover for the damage suffered by [Vaughn] while she was the owner. In order for the new owners to maintain an action, they would first have to establish damage to their interests in the property. *If, as [Vaughn's] counsel represents, the new owners bought the property with full knowledge of the defective construction and presumably paid no more than the fair market value of the property in its defective condition, there is little likelihood that the new owners would or could assert the same claim as [Vaughn].*" (*Vaughn, supra,* 223 Cal.App.3d at pp. 148–149, second italics added, fns. omitted.)[5]

After *Vaughn* came *Keru Investments, Inc. v. Cube Co.* (1998) 63 Cal.App.4th 1412 [74 Cal.Rptr.2d 744] (*Keru*). In 1985, Viljo Kaila sold an apartment building in Southern California to a group of investors, the Moross Group, which then hired the Cube Company to perform a seismic retrofit to strengthen the building against earthquakes. Despite the retrofit, the building sustained heavy damage in the 1994 Northridge earthquake, and was "yellow-tagged" by the city. Later that year, the Moross Group conveyed the building to Keru Investments, a company owned by Kaila. Keru acknowledged in the sale agreement that it was aware of the earthquake damage, and it agreed to

---

[5] The *Vaughn* court distinguished the case of *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749], where the subsequent owner of a home was permitted to maintain an action against the builder for defective installation of a radiant heating system. The *Vaughn* court explained that this was not because the cause of action had accrued in the original owner and passed to the subsequent owner upon sale of the property, but because the heating system failed after the sale. (*Vaughn, supra,* 223 Cal.App.3d at p. 149, fn. 5.)

accept the property in " 'as is, where is' " condition.[6] Nonetheless, Keru later sued Cube and others alleging the design and construction of the retrofit had been faulty. The jury returned a verdict in favor of Keru, and Cube appealed. (*Id.* at pp. 1415–1417.)

The appellate court began by discussing *Huang* and *Sumitomo Bank*, and the issue addressed in those cases: whether, and under what circumstances, a builder/developer owes a duty of care to a third party purchaser of a building with design or construction defects. The court concluded that "[a]lthough *Huang* and *Sumitomo Bank* stand for the proposition that under some circumstances subsequent purchasers can assert claims for negligence that occurred prior to their ownership," those decisions did not necessarily support Keru's position (because Cube, unlike the defendants in *Huang* and *Sumitomo Bank*, had not constructed a building intended for resale). (*Keru, supra,* 63 Cal.App.4th at pp. 1422–1423.) But then, without deciding whether or not these decisions supported Keru's position, the court said:

"There is another, more fundamental problem with [Keru's] claim. [Cube] performed the seismic retrofit for the Moross Group, and the earthquake damage that resulted from the failure to properly perform the work was suffered while the Moross Group owned the property. Put another way, not only was the defective construction work done on behalf of a previous owner, the building itself sustained the damage for which [Keru] seek[s] recovery prior to the transfer of ownership to Keru . . . . This leads to the question of whether Keru . . . suffered any injury for which tort recovery is warranted.

". . . [Keru] argue[s] that because knowledge of the defective work arose after the transfer of the property, [it] suffered injury and has a tort cause of action. This confuses two distinct concepts: when a cause of action accrues and when the statute of limitations begins to run.

" 'A cause of action accrues at the moment the party who owns it is entitled to bring and prosecute an action thereon. [Citations.]' [Citations.] That is said to occur when '. . . events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages.' [Citation.]

"*Under this definition of accrual, a tort cause of action arose against appellant either when the defective work was completed or when the building sustained damage as the result of the Northridge earthquake.* Neither the wrongful act nor the damages occurred while Keru . . . was the owner.

---

[6] The sale agreement also purported to include an assignment by the Moross Group of its rights in connection with the property, but the trial court found the evidence failed to establish that this was intended to include its claims against Cube. (*Keru, supra,* 63 Cal.App.4th at pp. 1415–1416.)

". . . It is evident that the cause of action for negligent construction against [Cube] was held by the Moross Group and not the party to whom it transferred the property after the cause of action accrued. This is clear from the holding in *Vaughn v. Dame Construction Co.*, . . .

". . . The injury was sustained by the Moross Group which owned the property when the earthquake devastated the building. [Keru] cannot claim to own the cause of action simply because [it] discovered the reason for the damage after the building was transferred. Under [Keru's] reasoning, every party who purchased a hulk of a building would automatically have a right to bring a lawsuit if they could find some previously unknown factor which contributed to the building's destruction. That is simply not the law. Choses in action belong to the party who suffered the injury. In this case the injury was suffered by [Keru's] predecessor, the Moross Group. In the absence of assignment, Keru . . . does not have standing to pursue it." (*Keru, supra,* 63 Cal.App.4th at pp. 1423–1425, italics added.)

It was *Keru*'s "accrual at the time of property damage" rule (italicized above), adopted in much the same form by the court in *Krusi,* that led to the trial court's ruling in the present case. We disagree with the definition insofar as it fails to take account of the owner's discovery of the damage, and we believe it was unnecessary to employ this very restrictive definition of accrual to reach the results in *Keru* and *Krusi,* for reasons we will explain after discussing the *Krusi* decision.

George Krusi was the trustee for two trusts that purchased an office building in 1995. The trusts were the fourth owner of the building, constructed in 1987 by the S. J. Amoroso Construction Co. (Amoroso). While the building was still under construction, a dispute arose between the original owner and the architect over responsibility for leaks in the garage headwall. The matter went to arbitration, and was resolved in 1988 in favor of the architect. Other leaks developed later, however, and the underlayment beneath the second floor was found to be deteriorating, but it was represented to the trusts that these problems had been repaired prior to their purchase of the building (and the purchase price was reduced by a small amount). Nevertheless, the problems persisted after the purchase and the trusts hired a consultant to inspect the building. The consultant concluded the problems were the result of " 'building wide deficiencies in the original design and construction,' " including inadequate installation of a waterproofing membrane on the garage walls; that these defects were not evident without an intrusive inspection of the building; and that much of the building had been damaged by water infiltration. In 1996, the trusts sued Amoroso and others on several theories, including negligence. In 1998, following extensive discovery, the trial court granted Amoroso's motion for summary judgment on the ground

principally that the trusts lacked standing to sue for the defects, i.e., it found the cause of action had accrued in a previous owner. The trusts appealed. (*Krusi, supra*, 81 Cal.App.4th at pp. 997–998.)

In considering the question of accrual, the court in *Krusi* reviewed, and sought to reconcile, the decisions in *Huang, Sumitomo Bank, Vaughn*, and *Keru.*

"[I]t will be remembered that the *Keru* court distinguished *Huang* and *Sumitomo Bank* on two distinct bases. First of all, it said that the defendants in those cases were both builders/developers who clearly intended to resell the properties at issue, whereas the defendant in *Keru* was a mere seismic retrofit contractor who had no such intention. Its second point of distinction implicated the issue of when and to whom the cause of action for negligent construction accrued. We think the second point has merit, but we are less impressed with the first. [¶] . . . [¶]

"[As for the second point,] [i]t is clear that a cause of action for damage to real property accrues when the defendant's act causes ' "*immediate* and *permanent* injury" ' to the property or, to put it another way, when there is '[a]ctual and appreciable harm' to the property. (*CAMSI IV v. Hunter Technology Corp.* [(1991)] 230 Cal.App.3d [1525,] 1534 [282 Cal.Rptr. 80] [(*CAMSI IV*)].) In the current flurry of asbestos-related cases, many have been litigated involving alleged injuries to real property. The leading case of that sort in this district makes clear that a cause of action for asbestos-related injury to real property accrues when 'damage' or 'physical injury to property' occurs. (*San Francisco Unified School Dist. v. W. R. Grace & Co.* (1995) 37 Cal.App.4th 1318, 1327, 1329 [44 Cal.Rptr.2d 305] . . . . [(*Grace*)].) This rule is, of course, simply a corollary of the general rule regarding accrual of causes of action. (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 467–468, pp. 590–592.) We are aware of no reason why it should not apply, as the *Keru* court applied it, to actions alleging negligence in the design, engineering, or construction of buildings.

"Thus, if, as, and when an owner of a building suffers harm because of inadequate design of, or engineering or construction work performed on a building, a cause of action accrues to that owner. To be sure, it may choose to deliberately transfer that cause of action to another, but without some clear manifestation of such an intention, the cause of action is not transferred to a subsequent owner. [Citation.] Nothing in *Huang* or *Sumitomo Bank* suggests a contrary rule for the simple reason that nothing in those cases suggests that any damage to the relevant building was ever discovered during a prior ownership.

"It is, of course, clear that a tort duty runs from an architect, designer, or contractor to not only the original owner for whom real property improvement services are provided, but also to subsequent owners of the same property. We made this point in *Huang* . . . . [¶] But, . . . [this] does not mean that, in a case implicating *damage to such property*, once a cause of action in favor of a prior owner accrues, another cause of action against the same defendant or defendants can accrue to a subsequent property owner—unless, of course, the damage suffered by that subsequent owner is fundamentally different from the earlier type . . . .

"Which brings us to the ultimate question of whether, on the facts of this case, we are talking about the accrual of the same, or different, causes of action . . . . [¶] We think the trial court correctly, albeit implicitly, determined that there was no such triable issue here. In that court, [the trusts] belatedly presented, in support of their motion for reconsideration, a declaration by the trustee . . . stating, in broadly conclusory terms, that prior to the investigation done by the consultants he hired he was 'not aware of any defects in the original design or construction of the subject building.' But the evidence before the court when it ruled on the first motion for summary judgment, including evidence adduced by [the trusts], was overwhelmingly to the contrary.

"For example, in opposition to the original Amoroso motion for summary judgment, [the trusts] presented a declaration of the building's property manager both during the regimes of [the trusts] and its seller . . . . He conceded that 'tenants have reported leaks to my attention' and then averred that, since the date of [the trusts'] purchase of the building, 'the frequency and magnitude of the reported leaks . . . have increased,' thus clearly conceding that after [the trusts'] succession to ownership there was a continuation, in increased form, of the same problems extant during the prior ownership . . . .

"But the icing on this particular cake is the concession by [the trusts] that . . . the building's architect[] had *actually litigated* a claim for improper design of the garage headwall . . . with the original owners of the property. Although [the trusts] argued in the court below that they were not attacking the design of those walls, they explicitly sought to recover for 'water infiltration at all garage walls,' and one of the defendants with respect to all such damage claims was the same architectural firm.

"We conclude, in short, that there was no triable issue of material fact as to whether the causes of action that accrued to prior owners of the building were the same as that alleged by appellants." (*Krusi, supra*, 81 Cal.App.4th at pp. 1004–1007, fns. omitted.)

Two other cases mentioned in *Krusi* warrant discussion. The first is *CAMSI IV, supra,* 230 Cal.App.3d 1525, 1534, cited for the proposition that "a cause of action for damage to real property accrues when the defendant's act causes ' "*immediate* and *permanent* injury" ' to the property or . . . when there is '[a]ctual and appreciable harm' to the property." (*Krusi, supra,* 81 Cal.App.4th at p. 1005.)

*CAMSI IV* was an action by the current owner of real property brought against a lessee (Hunter) of the former owner (Monsanto) who was alleged to have contaminated the soil and groundwater with hazardous chemicals. The principal question in the case was whether the action was barred by the three-year statute of limitations on claims for "trespass upon or injury to real property." (Code Civ. Proc., § 338, subd. (b).) Hunter had ceased to occupy the property in 1983, when Monsanto sold it to a third party, whose successors sold it to CAMSI IV in 1985. Later the same year, the regional water quality control board ordered an investigation to determine the extent to which the property had been contaminated. In June of 1987, after the investigation established that the soil and groundwater contained actionable levels of "volatile organic chemicals (VOCs)," the board announced its intention to issue a cleanup order. The order, adopted in 1988, was directed primarily at Monsanto and Hunter, but also secondarily at CAMSI IV as the current owner of the property. CAMSI IV sued Hunter for negligence and strict liability. Hunter demurred on the ground, among others, that the claims were time-barred. The trial court sustained the demurrers without leave to amend, and CAMSI IV appealed. (*CAMSI IV, supra,* 230 Cal.App.3d at pp. 1529–1533.)

The appellate court began by noting that, under the "orthodox rule in tort actions," the three-year statute of limitations had started to run no later than 1983 (when Hunter last occupied the property) and so had expired in 1986, two years before CAMSI IV filed the action.

"The orthodox rule in tort actions is that the applicable limitation period will run from accrual of the action 'upon the occurrence of the last element essential to the cause of action.' [Citation.] In the case of injury to real property, the orthodox rule would dictate that 'if the defendant's act causes *immediate* and *permanent* injury' to the property the statute would run from the date of the act. [Citation.] If the defendant has caused injury by a series of acts, the orthodox rule suggests an action could be brought within the limitation period running from the last act. [Citation.]" (*CAMSI IV, supra,* 230 Cal.App.3d at pp. 1534; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 549, p. 698 and § 552, p. 703 [distinguishing immediate and permanent injury to real property, e.g., by dispossession or erection of a structure, from a continuing trespass or nuisance].)

CAMSI IV maintained, however, that *it* had suffered no "[a]ctual and appreciable" harm, and so its cause of action had not accrued, until 1987 when the board announced its intention to issue the cleanup order. The court rejected this argument for two reasons.

"First, it is apparent as an abstract proposition, and has been assumed in a number of cases, that for limitations purposes the harm implicit in a tortious injury to property is harm to the property itself, and thus to *any* owner of the property once the property has been injured and not necessarily to a particular owner. Thus once the sewer line has been improperly located on the property [citation], or the lot preparation and foundation construction have been improperly done [citation], or the encroaching buildings are constructed [citation], the tort is complete and the statute of limitations (unless forestalled by the 'discovery rule' or some other special doctrine) begins to run: An owner must bring its claim to court within the statutory period or the claim will be barred *for that and all subsequent owners*. Normally a subsequent owner will not be personally harmed by the tort until he or she becomes the owner, but no case has held that each new owner thus becomes entitled to a new statute of limitations against the tortfeasor. Such a rule would wholly disregard the repose function of statutes of limitations. [Citation.]

"Second, CAMSI IV's argument appears to equate harm with the regional board's announcement, in June 1987, of its intent to order cleanup of the offensive substances. But from the face of the second amended complaint it is apparent that any harm the alleged tortfeasor, Hunter, had done to the property had been completed by no later than 1983 . . . . *To the extent harm to CAMSI IV, as distinct from harm to the land, might be relevant, that harm occurred as soon as CAMSI IV purchased the contaminated property at a price inferably greater than it would have paid given full disclosure and comprehension of the contamination.* To avoid this conclusion CAMSI IV would be required to assert that the underlying harm to the land was wholly irrelevant to CAMSI IV's interests so long as the harm remained undiscovered, and thus that CAMSI IV was harmed not by Hunter's alleged contamination but rather by the regional board's announcement that the parcel was contaminated. CAMSI IV . . . has flatly denied that this is its theory . . . .

"CAMSI IV's harm argument appears to confuse *harm* with *discovery* of harm. [Citations.] Both are relevant to commencement of the limitation period, but they must be analyzed separately." (*CAMSI IV, supra*, 230 Cal.App.3d at pp. 1534–1536, third italics added.)

Thus, *CAMSI IV* recognizes a distinction between harm to real property and harm to the owner's interest in the property, and acknowledges they do not necessarily occur at the same time. Moreover, under *CAMSI IV*, an owner

who did not take title to property until after it sustained an "immediate and permanent injury" might nonetheless be entitled to maintain a tort action based upon the injury. (That is, if the strict "accrual at the time of property damage" rule applied here, Monsanto not CAMSI IV would have owned the cause of action against Hunter.) In the example given by the court, CAMSI IV's cause of action most likely would be against the seller for failing to disclose the full extent of the contamination, rather than against Hunter for causing it. But what if the situation had been more like the present one, and the seller had not known about the contamination? If the previous owner had sold the property to CAMSI IV in good faith, at a price that did not reflect the contamination damage, what harm would the seller have suffered? If the answer is "none," who then would have owned the cause of action against Hunter?

The answer seems to be that the cause of action belongs to the owner who first discovered, or ought to have discovered, the property damage. It is only then that some entity capable of maintaining a legal claim will have suffered a compensable injury, e.g., the cost of repair and/or the loss in the property's value (inasmuch as the owner then has a duty to disclose the damage to potential buyers).

This rule is entirely consistent with the results in both *Keru* and *Krusi* (if not with their statements of the rule). In *Keru*, remember, the current owner of a building that had suffered earthquake damage was held to have no cause of action against the construction company that performed a faulty seismic retrofit because the work had been done and the (obvious) damage had been sustained while the building belonged to the previous owner, and because the previous owner had disclosed the damage when it sold the property.

Similarly, the plaintiff in *Krusi*, the current owner of a building damaged by leaks due to faulty construction, was held to have no cause of action against the construction company because the leaks, and the damage, were known to previous owners and in fact had been the subject of litigation. Indeed, in the following passage from *Krusi*, the court seems implicitly to acknowledge that a cause of action for construction defects does not accrue until the property owner discovers the resulting damages.

"Thus, if, as, and when *an owner of a building suffers harm* because of inadequate design of, or engineering or construction work performed on a building, a cause of action accrues to that owner . . . . Nothing in *Huang* or *Sumitomo Bank* suggests a contrary rule *for the simple reason that nothing in those cases suggests that any damage to the relevant building was ever discovered during a prior ownership*." (*Krusi, supra,* 81 Cal.App.4th at p. 1005, italics added.)

This same reasoning appears in *Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48 [120 Cal.Rptr.2d 535]. In 1984 HBAL, a partnership in which Mayer was a general partner, hired Driver to build an apartment complex. In 1985, Driver sued HBAL for money due, and HBAL cross-complained against Driver for construction defects. In 1986, HBAL assigned its rights in the lawsuit to the individual partners, who then appointed another entity, HBMP, to act as their attorney-in-fact with authority to take all actions in connection with the suit. HBMP eventually settled with Driver, but Mayer objected to the settlement and tried to continue prosecuting the cross-complaint. Ultimately, however, Driver obtained a judgment in its favor. In 1995 Mayer, relying on the assignment in the previous action, sued Driver for latent construction defects he alleged he had discovered within the past three years. The court ruled Mayer lacked standing to maintain the action, and Mayer appealed.

The appellate court affirmed. It held that HBAL's assignment of its rights in the first action did not confer standing on Mayer to bring the second one. The court then turned to Mayer's other claim on appeal. Mayer maintained that, as a general partner in HBAL, he had possessed a property interest in the apartment complex—and his interest had been damaged by Driver's defective construction—*prior to the assignment*. On this premise, he argued he had thus acquired a cause of action against Driver which, like that of the condominium owner in *Vaughn*, had survived the transfer of the interest to a third party. The court rejected this claim. It noted that Mayer, unlike the owner in *Vaughn*, had transferred his interest *before* he discovered the latent construction defects, the clear implication being that it was the discovery of the property damage, not its occurrence, that had caused a claim to accrue in the condominium owner in *Vaughn*.

"*Vaughn* is . . . distinguishable because there the original owner discovered and sued for the construction defects before transferring the property. The court held the sale of the property did not automatically transfer or assign the cause of action. Here, the construction defects alleged were not known or discoverable until the 1992–1995 period preceding filing of the Mayers' suit. This was after the transfer. If the plaintiff Vaughn had sold the property before she or the buyer were aware of the construction defects, the *Vaughn* court might have concluded only the buyer suffered damage. [Citation.]" (*Mayer v. C.W. Driver, supra,* 98 Cal.App.4th at pp. 60–61.)

The second noteworthy case mentioned in *Krusi* is *Grace, supra,* 37 Cal.App.4th 1318, which the court cited along with *CAMSI IV* in support of the "accrual at the time of property damage" rule.

"In the current flurry of asbestos-related cases, many have been litigated involving alleged injuries to real property. The leading case of that sort in this

district makes clear that a cause of action for asbestos-related injury to real property accrues when 'damage' or 'physical injury to property' occurs." (*Krusi, supra,* 81 Cal.App.4th at p. 1005, citing *Grace, supra,* 37 Cal.App.4th at pp. 1327, 1329.)

The issue in *Grace* was this: "When a building is constructed with asbestos-containing materials, does a property owner's *cause of action* for strict liability or negligence accrue on the owner's discovery of the mere presence of asbestos in the building or when asbestos contamination occurs?" (*Grace, supra,* 37 Cal.App.4th at p. 1322, italics added.) The court concluded it was the latter: the cause of action does not accrue, and so the statute of limitations does not start to run, until there has been some appreciable physical injury to person or property in the form of contamination. (*Id.* at pp. 1329, 1335.)

In reaching this conclusion, the court stated the rule regarding accrual of a cause of action in tort as follows:

"In tort actions, the statute of limitations commences when the last element essential to a cause of action occurs. [Citations.] The statute of limitations does not begin to run and no cause of action accrues in a tort action until damage has occurred. [Citation.] If the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of 'appreciable and actual harm, however uncertain in amount,' that consists of more than nominal damages. [Citations.] . . . The mere breach of duty—causing only nominal damages, speculative harm or the threat of future harm not yet realized—normally does not suffice to create a cause of action. [Citations.]

"The common law rule that a cause of action accrued on the date of injury has been modified by the discovery rule. [Citation.] *Under the discovery rule, a cause of action does not accrue until the plaintiff either discovers the injury and its negligent cause or could have discovered the injury and cause through the exercise of reasonable diligence.* [Citations.] The statute of limitations begins to run when the plaintiff suspects or should suspect that his or her injury was caused by wrongdoing—when the plaintiff has notice of information or circumstances that would put a reasonable person on inquiry . . . ." (*Grace, supra,* 37 Cal.App.4th at p. 1326, italics added.)[7]

---

[7] *Grace* also contains two other, seemingly inconsistent, statements of the accrual rule. "Once physical injury to property occurs—assuming that damage is the last element of the tort cause of action to occur—the cause of action accrues and the limitations period commences." (*Grace, supra,* 37 Cal.App.4th at p. 1329.) However, it also states: "The plaintiff must be aware of the physical manifestation of the injury for the cause of action to accrue and the

If nothing else, this expression of the accrual rule in *Grace* (which ties accrual to discovery)—and *Krusi*'s citation to *Grace* in support of a different expression of the rule (which does not)—illustrates the imprecision with which the cases sometimes distinguish between the accrual of a cause of action and commencement of the statute of limitations. This perhaps explains why both parties in this case are able to cite decisions that appear to support their respective positions.

The decision most often cited in support of an "accrual at the time of discovery" rule is *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398 [163 Cal.Rptr. 711] (*Leaf*) (disapproved on another point in *Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259]). The Leafs were subsequent owners of a duplex in San Mateo County. Shortly after buying the duplex in 1972, they discovered some of the floors were not level, and the exterior siding was cracked. Upon further investigation, they learned these problems had been caused by subsidence of the soil on the south side of the property due to accumulation of subsurface water. The Leafs sued the builder, and obtained a settlement in 1976 which they used to install a drainage system. But a cave-in occurred in the course of excavation, which led to the discovery that the city's sewer lines on or near the north side of the property had been installed improperly, and were funneling water beneath the house. The Leafs then sued the City of San Mateo. The court granted summary judgment for the city on the ground the action was time-barred, and the Leafs appealed.

The issue on appeal, as phrased by the court, was when the Leafs' *cause of action* had accrued against the city: "[The city] takes the position that [the Leafs'] cause of action accrued when [they] became aware of the *damage* to their property, i.e., when they noticed the unlevel floors and cracks in the building exterior. [The Leafs], on the other hand, urge the 'rule of discovery,' which would start a statute [of limitations] running only when [they] not only were aware of the damage, but became aware of its negligent cause, i.e., at the time of the cave-in." (*Leaf, supra*, 104 Cal.App.3d at p. 406.)

"The traditional rule in tort cases is that the statute of limitations begins to run upon the *occurrence* of the last fact essential to the cause of action. Although sometimes harsh, the fact that plaintiff is neither aware of his cause of action nor of the identity of a wrongdoer will not toll the statute. [Citations.]

"The harshness of this rule has been ameliorated in some cases where it is manifestly unjust to deprive plaintiffs of a cause of action before they are

statute of limitations to begin running." (*Id.* at p. 1332, citing *Rose v. Fife* (1989) 207 Cal.App.3d 760, 768 [255 Cal.Rptr. 440].)

aware that they have been injured. This modified rule has been applied to latent defects in real property and improvements. [Citations.] In the case of such latent defects the statute of limitations begins to run only when 'noticeable damage occurs.' [Citation.]

"[*Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231 [73 Cal.Rptr. 127] (*Oakes*)], a case specifically dealing with consequential damages resulting from underground trespass, held that a cause of action accrues when the surface damage is 'sufficiently appreciable to a reasonable man.' (*Oakes, supra*, at p. 255.) . . .

"[The Leafs] urge that this court apply the 'rule of discovery' in lieu of the standard articulated in *Oakes*. Although it has been said that a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action [citations], this has been interpreted under the discovery rule to be when 'plaintiff either (1) actually discovered his injury and *its negligent cause* or (2) could have discovered injury *and cause* through the exercise of reasonable diligence [italics added].' [Citations.] . . . [¶] . . . [¶]

"The discovery rule operates to protect the plaintiff who is 'blamelessly ignorant' of his cause of action. [Citations.] Accordingly, we do not think that [the Leafs'] cause of action in this case should accrue from the occurrence of the last essential fact, nor from discovery of the damage to their property, as [the city] contends, but rather from the point in time when [they] became aware of [the city's] negligence as a cause, or could have become so aware through the exercise of reasonable diligence.

"The ultimate question therefore is whether [the Leafs] exercised reasonable diligence in discovering the negligent cause of their injuries. [Citation.] We see no reason to commence the running of the statute of limitations when [the Leafs], at the outset, made reasonable, but unsuccessful, efforts to identify the negligent cause of damage . . . . It would be contrary to public policy to require that plaintiffs file a lawsuit against [the city] at a time when the evidence available to them failed to indicate a cause of action against this defendant. [Citation.]

"Thus, under the facts alleged by [the Leafs], their cause of action against [the city] would have accrued at the time of the cave-in of the sewer trench." (*Leaf, supra*, 104 Cal.App.3d at pp. 406–409; see *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1065 [14 Cal.Rptr.2d 604] [rejecting the "accrual at the time of damage" rule in *CAMSI IV* in favor of the discovery rule in *Leaf* where owners alleged negligent construction of

foundation and inadequate compacting of soil beneath house]; *Allen v. Sundean* (1982) 137 Cal.App.3d 216, 222 [186 Cal.Rptr. 863] [applying *Leaf* rule to action by homeowner alleging builder's use of inadequate and uncompacted fill caused house to suffer landslide damage].)

■ Although it is difficult to distill a consistent rule from these decisions regarding when a cause of action for latent construction defects accrues, it seems to us that *Leaf* and the other underground trespass cases are most closely analogous to the case now before us, and the underlying equitable principle expressed there ought to apply here as well, i.e., it would be "manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." (*Leaf, supra,* 104 Cal.App.3d at p. 406.) The court in *Oakes* expressed the same idea this way:

"A cause of action for consequential damages resulting from an underground trespass does not arise until there is surface damage which would put a reasonable man on notice. [Citations.] The rationale of this rule is apposite to this case. 'To require an owner . . . to take notice of a trespass upon his underlying [real property] at the time it takes place, is to require an impossibility; and to hold that the statute begins to run at the date of the trespass is in most cases to take away the remedy of the injured party before he can know that an injury has been done him. A result so absurd and so unjust ought not to be possible.' [Citation.]" (*Oakes, supra,* 267 Cal.App.2d at p. 255.)

■ The inequitable consequences of the trial court's ruling in this case are manifest. If the discovery of latent defects were relevant only to the commencement of the statute of limitations, and not to accrual of the cause of action, Siegal's discovery of the water damage in his roof and walls would have started the limitations period to run on a cause of action he did not own, but which belonged instead to the original owner of his house. But the original owner, assuming he or she learned of this theoretical windfall within the next three years, would have no cause of action against Anderson as a practical matter and so nothing of value to assign to Siegel, because that owner would have suffered no compensable injury. There would, in effect, be no remedy for the defects in Siegel's and Sanchez's homes. This cannot be the law. A cause of action cannot have accrued before there was someone in a position to actually assert it.

## DISPOSITION

The judgment is reversed. Costs are awarded to appellants.

Wiseman, J., and Levy, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 1, 2004.