Filed 2/24/15  Micah Investment Trust v. Atkinson CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICAH INVESTMENTS TRUST,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BRETT ATKINSON et al.,<br><br>    Defendants and Respondents. | A139573<br><br>(Marin County<br>Super. Ct. No. CIV1203443) |

Micah Investments Trust appeals from the dismissal of its second amended complaint following the trial court's orders sustaining respondents' demurrers without leave to amend.  Contrary to the trial court's findings, appellant contends it is the real party in interest, its claims are not barred by the applicable statute of limitations, and it properly alleged causes of action for negligence and nuisance.  We affirm.

**STATEMENT OF THE CASE AND FACTS**

Since December 2009, appellant has been the owner of real property at 3872 Ciarlo Lane in Vacaville, California (the Micah property), which borders real property owned by Carl Walther (the Walther property).  In 2008, when the Micah property was owned by the now-dissolved Micah Investments, Inc. (Micah), Micah sued Walther, Gateway Solutions, Inc. (Gateway), and other defendants (collectively the Walther defendants), alleging they had damaged the Micah property by "trespassing, cutting roads, and committing other violations, and using it as their own."

In an effort to resolve the lawsuit, the Walther defendants agreed to perform work to repair and remediate the damage to the Micah property (the Project).  For this purpose,

1

in 2009, the Walther defendants retained Foulk Gomez & Associates, Inc. (Foulk), civil engineer and surveyor; Materials Testing, Inc., doing business as KC Engineering (MTI), geotechnical engineer; and Brett Atkinson (Atkinson), construction contractor. The Project was substantially completed by the end of October 2009 but "numerous patent defects and deficiencies continued to remain." These defects allegedly caused flooding, erosion, diminished lateral and subadjacent support and an unstable hillside, all affecting the Micah property.

In December 2009, Micah transferred title to the Micah property to appellant.[1] Appellant alleged that at this time, "the two entities entered into an oral agreement with each other through their respective sole shareholder and sole Trustee, A.E. Cox, whereby it was agreed that the corporation would assign all of its accrued and non-accrued legal and equitable rights and interest to [appellant]." Micah filed its Certificate of Dissolution on December 18, 2009.

In February 2010, Micah entered into a settlement agreement with Walther and Gateway to resolve the 2008 lawsuit. The settlement agreement expressly reserved Micah's right to sue the Walther defendants for the work performed in 2009 and provided that the rights of the parties, including the right to sue, were binding upon the parties' successors and assigns.

On July 27, 2012, Micah and appellant filed the complaint in the present case, asserting causes of action for negligence, trespass and private nuisance. On January 18, 2013, before the hearings scheduled on the defendants' demurrers, Micah and appellant filed a first amended complaint alleging causes of action for negligence, private nuisance and unlawful business practices.

On February 19, MTI filed its demurrer to the first amended complaint, on grounds including that Micah did not have capacity or standing to sue under Nevada Revised Statutes section 78.585, which bars a corporation from asserting a cause of action not commenced within two years of corporate dissolution; the cause of action for

---

[1] The deed was signed on December 10, and recorded on December 15.

negligence was barred by the two-year statute of limitations for professional negligence (Code Civ. Proc., § 339, subd. (1)); and all of the causes of action failed to state facts sufficient to constitute a cause of action. Foulk demurred on February 20, on the basis of the statute of limitations as to the negligence claim and failure to state a cause of action as to all the claims. Atkinson's demurrer, filed on March 7, was based on the grounds that Micah lacked capacity to sue under Nevada Revised Statutes section 78.585 and that appellant was not a real party in interest because the causes of action accrued to Micah before the property was transferred to appellant.

On March 12, 2013, the alleged 2009 oral assignment of rights from Micah to appellant described above "was memorialized and reduced the parties' intentions and agreements of December 10, 2009, to a written assignment," retroactive to the date of the original oral assignment agreement on December 10, 2009. The written assignment was recorded.

On April 4, the trial court sustained MTI's and Foulk's demurrers with leave to amend as to the first two causes of action and without leave to amend as to the third cause of action. On April 9, the court sustained Atkinson's demurrer as to Micah without leave to amend based on lack of capacity to sue and as to appellant with leave to amend based on lack of standing.

Appellant filed its second amended complaint on April 25, asserting causes of action for negligence and nuisance. The second amended complaint alleged for the first time that Micah assigned its rights to appellant at the time it conveyed the Micah property, as stated above, as well as that damages from the defective work on the Project occurred "when the 2009 work was substantially completed and the seasonal rains began, which was after the transfer of the Micah property to [appellant]."

Atkinson demurred to the second amended complaint on the grounds that appellant was not a real party in interest because the causes of action accrued to Micah, not appellant, and the allegation of "seasonal rains" after the property transfer did not constitute a separate cause of action accruing to appellant; the alleged oral assignment of rights from Micah to appellant was invalid under the statute of frauds; and the claims

3

were barred by the statute of limitations.  Foulk also demurred on the grounds that appellant was not a real party in interest and the alleged assignment of rights was invalid, as well as that the negligence claim failed to state a cause of action and was barred by the statute of limitations, and the nuisance claim was in fact a negligence claim.  MTI demurred on the grounds that the complaint failed to state facts sufficient to constitute either of the causes of action for reasons including the statute of limitations bar and absence of legal duty.

On June 25, the trial court sustained the demurrers without leave to amend.  As to MTI's demurrer, the court stated:  "The first cause of action for negligence is barred by the two-year statute of limitations.  The second cause of action for nuisance fails because plaintiff has not alleged facts which show that moving party has engaged in conduct which is offensive, indecent, injurious to health, or so loud, smelly or obnoxious so as to interfere with the peaceful enjoyment of the plaintiff's property, which is a vacant lot."  As to Foulk's demurrer, the court ruled, "Plaintiff is not the real party in interest.  The negligence claim is barred by the two-year statute of limitations for professional negligence.  Plaintiff fails to state a valid cause of action for nuisance."  And as to Atkinson's demurrer, "Micah Trust has not alleged a fundamentally different cause of action than those that accrued to Micah Corp.  The complaint is barred by the two-year statute of limitations.  Additionally, the court found that "defendants did not owe a duty to plaintiff."  The second amended complaint was dismissed with prejudice.

Appellant filed a timely notice of appeal on August 20, 2013.

## DISCUSSION

We review the trial court's sustaining of a demurrer de novo.  (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412; *Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1008.)  " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed."  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  (*Speegle v. Board of*

4

*Fire Underwriters* (1946) 29 Cal.2d 34, 42.)' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) But a demurrer does not assume the truth of assertions that are contradicted by judicially noticeable facts or facts conceded by the plaintiff. (*Evans*, at p. 20.) "[A]ny inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations. (*Amid v. Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383, 1390.) Accordingly, a court is 'not bound to accept as true allegations contrary to factual allegations in former pleading in the same case.' (*Potter v. Arizona So. Coach Lines, Inc.* (1988) 202 Cal.App.3d 126, 133, fn. 2.)" (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 (*Vallejo Development*).)

"In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880.) We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained. (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.)" (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751-752.)

When a demurrer is sustained without leave to amend, " 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, quoting *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

Here, of the several grounds upon which the trial court sustained the demurrers, one is dispositive: Appellant lacked capacity to maintain this suit.

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) The "real party in interest is the party who has title to the cause of action, i.e., the one who has the right to maintain

5

the cause of action." (*Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 147 (*Vaughn*).) A "cause of action for damage to real property accrues when the defendant's act causes ' "*immediate and permanent injury*" ' to the property or, to put it another way, when there is '[a]ctual and appreciable harm' to the property." (*Krusi v. S.J. Amoroso Construction Co.* (2000) 81 Cal.App.4th 995, 1005 (*Krusi*), quoting *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1534.) The cause of action belongs to the party that owns the property at the time the damage is discovered or ought to have been discovered. (*Siegel v. Anderson Homes, Inc.* (2004) 118 Cal.App.4th 994, 1009 (*Siegel*).)

A cause of action for damages resulting from injury to property is personal property that may be assigned or transferred. (*Vaughn, supra,* 223 Cal.App.3d at p. 148.) The transfer of real property does not automatically transfer the personal cause of action; a party may transfer the right to recover for damages to the property without conveying title to the property, or may convey real property but retain a cause of action for injury thereto. (*Id.* at pp. 148-149.)

The second amended complaint alleged that respondents were hired in 2009 to perform repair and remediation work on the Micah property and were responsible for the performance of faulty and substandard work on the Project between August and October of 2009, and that "[b]y the end of October 2009, the defective work on the Project was substantially completed, but numerous patent defects and deficiencies continued to remain." These allegations make clear that a cause of action for injury to the Micah property accrued by October 2009, as " '[a]ctual and appreciable harm' to the property" was apparent at this time. (*Krusi, supra,* 81 Cal.App.4th at p. 1005.) The cause of action accrued to Micah, which was then the owner of the property that was allegedly harmed. (*Siegel, supra,* 118 Cal.App.4th at p. 1009.)

Appellant argues that Micah orally assigned its causes of action with respect to the Micah property to appellant when it transferred the property to appellant in December 2009. As described above, this assignment was first mentioned in the second amended complaint filed on April 25, 2013; neither the original complaint nor the first amended

6

complaint contained any reference to an assignment of rights. According to the allegations of the second amended complaint, the oral assignment that had been agreed upon in 2009 was reduced to writing on March 12, 2013, and recorded. Atkinson's demurrer, which argued that appellant was not a real party in interest because the causes of action accrued to Micah before the property was transferred to appellant, had been filed on March 7, 2013.

Respondents argue that the alleged assignment should be disregarded as a sham, noting both the "convenient" timing of appellant's first mention of the assignment—just after respondents' demurrers urged Micah was not a real party in interest and lacked capacity to sue—and the claim that the 2013 writing memorialized a 2009 oral agreement "between" Cox, as sole shareholder of Micah, and himself, as appellant's sole trustee.

Further, respondents point out that the allegations of the second amended complaint concerning the assignment are inconsistent with other allegations in the same pleading, as well as prior pleadings in this case. As discussed above, a court is not required to accept as true allegations that are contrary to those in a prior pleading, and may disregard inconsistent allegations that are unexplained. (*Vallejo Development, supra,* 24 Cal.App.4th at p. 946.) The original complaint in this case alleged that Micah was suing as "a dissolved corporation winding up its affairs for the benefit of its shareholder" and appellant was the current owner of the property, thereby asserting that each entity had a claim against respondents. The first amended complaint further elaborated that Micah, although dissolved, "continue[d] to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it, and enabling it to collect on its obligations," and that in February 2010, Micah entered a settlement agreement in the 2008 litigation which "excepted the work done between August 2009 through October 2009 and suits against third parties for damages." The second amended complaint similarly alleged that the February 2010 settlement agreement "expressly reserve[d] the right of Micah Corp. to bring a lawsuit against the Walther Defendants for the faulty work performed in 2009" and added that the agreement made the parties' rights, including the right to sue, "binding upon the parties' successors and assigns." All

7

these allegations—which assert that Micah possessed a cause of action for injury to the Micah property as of February 2010—are patently inconsistent with the new allegations of the second amended complaint that Micah assigned "all its accrued and non-accrued legal and equitable rights and causes of action in the Micah Property" to appellant in December 2009. If Micah was still pursuing its interests in the property in February 2010, it could not have assigned away "all" its rights and interests several months before, and if it assigned "all" its rights and interests to appellant in December 2009, there was nothing for it to "reserve" in February 2010.

Even aside from these points, however, the alleged assignment could not have given appellant a viable cause of action. When a cause of action is assigned, " ' "[t]he assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment." ' (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096; see [also] *Bliss v. California Cooperative Producers* (1947) 30 Cal.2d 240, 250 ['an assignee of a chose in action is subject to all equities and defenses existing at or before the notice of the assignment']; *Teater v. Good Hope Dev. Corp.* (1942) 55 Cal.App.2d 459 ['an assignee of a chose in action ordinarily acquires all of the rights and remedies possessed by the assignor for its enforcement, subject, however, to the defenses which may be urged against the assignor'].) This principle is also codified in Code of Civil Procedure section 368, which provides, in pertinent part, that '[i]n the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment.' " (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 310-311 (*Cal-Western*).)

In *Cal-Western*, a corporation assigned its rights and interests in a judgment to the plaintiff, which filed suit to enforce the judgment four years later. At the time of the assignment, the assignor's corporate powers and privileges had been suspended for failure to pay taxes, and this remained the case when the suit was filed. Upholding the trial court's dismissal of the action, the *Cal-Western* court explained that "because a

8

defense based on lack of capacity to sue existed at the time of notice of the assignment and could have been asserted against Pacific West One had it brought the action itself, Cal-Western was subject to the same defense in suing to enforce the Judgment as Pacific West One's assignee." (*Cal-Western*, *supra,* 221 Cal.App.4th at p. 312.)

The same is true in the present case. As the trial court correctly determined, when the present case was filed on July 27, 2012, Micah lacked capacity to sue pursuant to Nevada Revised Statutes section 78.585. A foreign corporation's capacity to sue or be sued after dissolution is determined according to the law of the state of incorporation. (*Greb v Diamond Internat. Corp.* (2013) 56 Cal.4th 243, 245-246.) Nevada Revised Statutes section 78.585 bars a dissolved corporation from commencing an action more than two years after dissolution on facts it knew or should have known of prior to dissolution.[2] Micah's Certificate of Dissolution was filed on December 18, 2009, more than two years prior to the filing of the present lawsuit.[3] Because Micah lacked capacity to file suit in July 2012, appellant also lacked capacity to sue.

---

[2] Nevada Revised Statutes section 78.585, subdivision 1, provides: "The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or stockholders commenced within 2 years after the date of the dissolution with respect to any remedy or cause of action in which the plaintiff learns, or in the exercise of reasonable diligence should have learned of, the underlying facts on or before the date of dissolution, or within 3 years after the date of dissolution with respect to any other remedy or cause of action. Any such remedy or cause of action not commenced within the applicable period is barred. The corporation continues as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually to settle and close its business, to collect its assets, to collect and discharge its obligations, to dispose of and convey its property, to distribute its money and other property among the stockholders, after paying or adequately providing for the payment of its liabilities and obligations, and to do every other act to wind up and liquidate its business and affairs, but not for the purpose of continuing the business for which it was established."

[3] Neither Micah nor appellant appealed the trial court's ruling granting the demurrers to the first amended complaint on the basis that Micah lacked capacity to sue, thereby forfeiting any claim of error in the trial court's ruling on this issue. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966, fn. 2.)

Appellant argues that Nevada Revised Statutes section 78.585 is inapplicable because the present action is not "by" or "against" a dissolved Nevada corporation but rather by appellant, to whom Micah assigned its right to sue while the corporation was active and within the statutory winding down period. This argument, of course, assumes the truth of the allegations that Micah assigned its rights to appellant in December 2009, when Micah could still have asserted the claims itself. But, as indicated above, an assignee takes a cause of action " ' "subject to *any defenses* which the *obligor* has against the assignor *prior to notice of the assignment*." ' " (*Cal-Western, supra,* 221 Cal.App.4th at p. 311, quoting *Johnson v. County of Fresno, supra,* 111 Cal.App.4th at p. 1096, italics added; Code Civ. Proc., § 368.) Even accepting appellant's allegations that an oral assignment was made in December 2009, appellant has not alleged that respondents had notice of the assignment prior to March 2013, at which time Micah clearly lacked capacity to sue. Nor does appellant suggest any such allegation could be made.

Absent an assignment or transfer of the cause of action, a subsequent owner of real property has no right to assert a cause of action that previously accrued in favor of a prior owner. (*Krusi, supra,* 81 Cal.App.4th at p. 1005.) There are situations in which a subsequent owner may have a cause of action without an assignment from the original owner, because " 'a tort duty runs from an architect, designer, or contractor to not only the original owner for whom real property improvement services are provided, but also to subsequent owners of the same property.' " (*Standard Fire Ins. Co. v. Spectrum Community Assn.* (2006) 141 Cal.App.4th 1117, 1143, quoting *Krusi,* at p. 1005.) But, as we explained in *Krusi,* this "does not mean that, in a case implicating *damage to such property*, once a cause of action in favor of a prior owner accrues, another cause of action against the same defendant or defendants can accrue to a subsequent property owner— unless, of course, the damage suffered by that subsequent owner is fundamentally different from the earlier type. Thus, if owner number one has an obviously leaky roof and suffers damage to its building on account thereof, a cause of action accrues to it against the defendant or defendants whose deficient design or construction work caused the defect. But, if that condition goes essentially unremedied over a period of years,

10

owners two and three of the same building have no such right of action against those defendants, unless such was explicitly (and properly) transferred to them by owner number one. But owners two and three could well have a cause of action against those same defendants for, e.g., damage caused by an earthquake if it could be shown that inadequate seismic safeguards were designed and constructed into the building. Such is, patently, a new and different cause of action." (*Krusi*, at p. 1006.) In *Krusi*, we affirmed the trial court's determination that the cause of action for damage to a building asserted by its fourth owners in fact accrued to prior owners because the leaks that formed the basis of the claims were "a continuation, in increased form, of the same problems extant during the prior ownership," (*id*. at p. 1007) as evidenced by the property manager's declaration that tenants had reported leaks and "since the date of [the subsequent owners'] purchase of the building, 'the frequency and magnitude of the reported leaks . . . have increased[.]' " (*Ibid*.)

Here, appellant attempts to preserve its cause of action by pointing to the allegations of the second amended complaint that in addition to the claims assigned from Micah to appellant, "[w]hen the 2009 work was substantially completed and the seasonal rains began, which was after the transfer of the Micah Property to Micah Trust, other damages from Defendants' defective work on the Project occurred which included, but are not limited to: 1) the velocity and volume of the uncontrolled flow of downstream water has caused substantial erosion and an unstable and dangerous condition of the hillside and increased the deposition of sediment, scouring and undercutting; 2) the alteration of the natural water flow through Plaintiff's Property has left portions of the land exposed and unprotected; 3) storm water continues to percolate in the underlying substrates; 4) the flow of runoff has created pooling on Plaintiff's Property; and 5) the lateral support has been damaged due to earth movement and improper design."

But this alleged damage is no different in kind from that alleged to have caused injury to the land prior to appellant's ownership. The second amended complaint alleged that respondents' negligence in performing their work on the Project in 2009 included "excavating on the Micah Property setbacks which cut away the lateral support and

11

created an unstable and dangerous hillside," "failing to use reasonable code-required structures to support the land both above and below the Micah Property line," "altering the natural water flow through the Micah Property leaving land exposed and unprotected when [respondents] knew or should have known that the faulty work would result in continued erosion, instability, disintegration of the surface structure, slipping, and loose soil and subsidence," "damming the flow of runoff which created pooling on the Micah Property," "failing to install keyways and interceptor drains which would allow for the controlled flow of water and prevent the hillside from collapsing, and the soil from eroding and subsiding," and "failing to properly revegetate the soil which could have helped to control the erosion and subsidence." By the end of October 2009—when Micah still owned the property—respondents' work was "substantially completed" but "patent defects and deficiencies" remained. As in *Krusi, supra,* 81 Cal.App.4th 995, the damages that were alleged to have occurred subsequently, when the seasonal rains began, were a continuation of the same type that had been present and known to Micah before appellant took ownership of the property.

Appellant relies upon *Stanford Fire, supra,* 141 Cal.App.4th 1117, for the proposition that a subsequent owner may have a cause of action against a contractor even without an assignment from the prior owner. In that case, a homeowners association brought a construction defect action against the developer of a condominium project. The developer's insurer argued it had no duty to defend because the association did not own any interest in the property, and had not even yet been formed, during the insurance policy period, and therefore could not have suffered damage during the covered period. (*Id.* at p. 1122.)

Damage to the property, however, had occurred during the policy period. (*Stanford Fire, supra,* 141 Cal.App.4th at pp. 1122-1123.) Relevant to the present case is the *Standard Fire* court's rejection of the insurer's claim that the association did not even have a cause of action against the developer. (*Id.* at p. 1139.) *Standard Fire* followed the conclusion of *Siegel, supra,* 118 Cal.App.4th 996, that " 'absent proof the original owners suffered actual economic injuries as a result of the construction defects . . . , they

12

possessed no causes of action against [the builder] that precluded [the subsequent owners] from maintaining their present claims.' " (*Standard Fire,* at p. 1145, quoting *Siegel,* at p. 996.) *Siegel* held, as indicated above, that " 'the cause of action belongs to the owner who first discovered, or ought to have discovered, the property damage. It is only then that some entity capable of maintaining a legal claim will have suffered a compensable injury, e.g., the cost of repair and/or the loss in the property's value (inasmuch as the owner then has a duty to disclose the damage to potential buyers).' " (*Standard Fire,* at p. 1145, quoting *Siegel,* at p 1009.) In the situation presented in *Standard Fire*, the court explained, "Who could have held a cause of action against the developers for construction defects before the Association acquired its interests in the Project? . . . If we were to adopt Standard Fire's arguments and hold that the Association, as a subsequent owner of interests in the Project, held no cause of action against the developers, then we would have to conclude either that the developers held a cause of action as against themselves, or that no one at all held a cause of action for construction defects. As the court stated in *Siegel*: 'A cause of action cannot have accrued before there was someone in a position to actually assert it.' (*Id.* at p. 1014.) It would appear that the Association was the first entity capable of maintaining a legal claim against the developers for the construction defects at issue and must, necessarily, hold a cause of action for the same." (*Standard Fire,* at pp. 1145-1146.)[4]

---

[4] *Standard Fire* took issue with part of our discussion in *Krusi.* After agreeing that "a tort cause of action may run in favor of a subsequent owner of property under certain circumstances," the *Standard Fire* court continued, "Query, however, whether some of the limiting language of *Krusi* may be imprecise or overbroad. (See *Siegel, supra,* 118 Cal.App.4th at p. 1009 [cause of action accrues in favor of prior owner on *discovery* of damages].)" (*Standard Fire*, *supra*, 141 Cal.App.4th at pp. 1143-1144.) The court found it unnecessary to resolve this question because, under *Krusi,* "the original owner of the property may have a cause of action against an architect, engineer or contractor for damage that original owner suffered, and a subsequent owner of the property may have a cause of action against that third party as well, for different damage that subsequent owner suffered. Applied to the facts before us, *Krusi* does not exclude the possibility that the Association, as a subsequent owner, could have a cause of action against a third party architect, engineer, or contractor. [¶] More importantly, however, *Krusi, supra,* 81

13

The circumstances of the present case are manifestly different. As we have said, the injuries to the Micah property now asserted by appellant were apparent and known to Micah during its ownership of the property, and no injuries of a fundamentally different nature (*Krusi, supra,* 81 Cal.App.4th at p. 1006) were alleged to have occurred after appellant became the owner.

The conclusion that appellant is not a real party in interest is fatal to the entire second amended complaint. Accordingly, it is unnecessary for us to consider whether the trial court was also correct in finding that appellant's cause of action for negligence was barred by the two-year statute of limitations for professional negligence; the cause of action for nuisance failed because appellant did not allege facts showing respondents had engaged in conduct constituting nuisance; and respondents did not owe a duty to appellant.

**DISPOSITION**

The judgment is affirmed. Appellant is to pay costs of appeal.

_____<br>
Kline, P.J.

We concur:

_____<br>
Richman, J.

_____<br>
Stewart, J.

_____

Cal.App.4th 995, does not exclude the possibility that the Association, as a subsequent owner, may have a cause of action against the prior owner and related entities, which developed the property." (*Standard Fire,* at p. 1144.) The *Standard Fire* court's criticism of *Krusi* appears to be that *Krusi* suggests a subsequent owner can *never* have a cause of action for damage that occurred before its ownership. Any such suggestion arose only from *Krusi's* failure to expressly except the situation where the damage is not discovered until after the change of ownership, a situation that was not presented on the facts of that case.