Filed 5/23/16  Citimortgage v. Yates CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITIMORTGAGE, INC.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LINDSEY YATES et al.,<br><br>        Defendants and Appellants. | A142698<br><br>(Sonoma County<br>Super. Ct. No. SCV-250399) |

**I.**

**INTRODUCTION**

Appellants Lindsey and Zachary Yates (the Yates) acquired two adjacent properties, 4401 and 4405 Price Avenue in Santa Rosa, California.  The Yates obtained separate loans for each of the properties and when the deeds of trust were recorded, incorrect legal descriptions were attached to each deed.  The 4405 Price Avenue deed of trust described the 4401 Price Avenue property (4401 property), and the 4401 Price Avenue property deed of trust described the 4405 Price Avenue property (4405 property).  When the Yates defaulted on their mortgage payments on the 4405 property, respondent Citimortgage, Inc. (Citi) sought to initiate foreclosure proceedings on that parcel, but could not do so because the deed had been reconveyed back to the Yates in error.  Upon further investigation, Citi learned that the reconveyance resulted from the fact that the property description on the deed for the 4405 property mistakenly was that for the 4401 property, and the loan for the 4401 property had been paid.  After learning it could not foreclose on the property, Citi waited more than three years to file an action to correct the

1

legal description and quiet title to the 4405 property. The Yates argued Citi's action was untimely because it fell outside the applicable three-year statute of limitations period (Code Civ. Proc., § 338, subd. (d)). After a one-day bench trial, the court found Citi's action was not barred by the statute of limitations, or alternatively that the evidence established an equitable mortgage which is governed by a four-year statute of limitations (Code Civ. Proc., § 337). We reverse the trial court judgment quieting title to the property and remand for further proceedings on the issue of equitable mortgage.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Default on 4405 Property Loan*

In January 2004, Lindsay Yates[1] obtained a loan for $342,000 for the 4405 property with SCME Mortgage Bankers, Inc. (SCME). Yates obtained a second loan from SCME of $345,000 for the 4401 property. When the deeds were recorded for the two properties, incorrect legal descriptions were used. The 4405 property deed of trust described the 4401 property, and the 4401 property deed of trust described the 4405 property.

In September 2005, the loan to the 4405 property was transferred from Aurora Loan Services (Aurora) to Citi. In October 2006, Five Star Service Corporation (Five Star) was substituted as the trustee for the 4405 property. In August 2007, Citi notified Yates that she was in default on the loan for the 4405 property by more than $10,000.

On October 1, 2007, North Bay Title Company (North Bay) sent a "Notice of Intent to Record Release of Obligation under Deed of Trust" to Yates, Five Star as the trustee, Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary, Aurora, and SCME. The notice was not sent to Citi, but Five Star likely advised Citi about the notice. The notice stated in 10 calendar days, North Bay would release the obligation to the deed of trust for the 4401 property, but the notice erroneously listed the

---

[1] The original deed of trust for the 4405 property was solely in Lindsey Yates's name.

2

recorder's number for the 4405 property. As a result, North Bay reconveyed the deed of trust to the 4405 property back to the Yates based on the erroneous legal description. At the same time, Aurora reconveyed the same deed based on the correct text language describing the 4401 property. As a result, both deeds were reconveyed to Yates when only the loan to the 4401 property had been repaid.

When Citi attempted to move forward with the foreclosure on the 4405 property, it was not able to do so because of the title problem caused by the release of the obligation and reconveyance of that property by North Bay. Citi's file contains a notation on November 23, 2007: "[W]e are not able to proceed due to title is not willing to insure our file. . . . Recommend referring to an attorney for judicial foreclosure."

On July 31, 2008, Citi's file contains a request: "Please transfer this to R&L [research and litigation] for a title issue. A satisfaction of mortgage was recorded in error in October 2007 by the lender that originated the loan."

On September 12, 2008, Citi sent a letter to North Bay regarding the 4405 property. Citi identified itself as the servicer of the loan that was in default and stated it had attempted to commence nonjudicial foreclosure proceedings, but it could not do so "due to recently discovering that the foreclos[ure] Deed of Trust was released by North Bay . . . , most likely in error." Citi informed North Bay the loan was still active and had not been satisfied. Citi demanded that North Bay investigate and record a rescission of the release of the lien. In the alternative, Citi requested that North Bay issue a trustee sale guarantee so that Citi could move forward with the foreclosure.

After an investigation by North Bay and the underwriter, Stewart Title Guaranty Company (Stuart Title), at the end of October 2008 Citi's attorney was informed of the mistake involving the legal description of the property and the resulting erroneous reconveyance. The attorney informed Citi of the errors on November 3, 2008.

Citi filed a legal action against the Yates on September 22, 2011. The operative complaint is Citi's third amended complaint, which states causes of action for quiet title, reformation of instruments, and declaratory relief.

**B.** *The Bench Trial*

In June 2014, the court conducted a one-day bench trial. Citi called two witnesses. Matthew Sinner, a business litigation analyst who acted as the custodian of records for Citi, testified about Citi's internal notes regarding the Yates mortgage. Sinner testified that a November 3, 2008 note by Citi's attorney was the first notice Citi had that there had been an incorrect legal description in the deed of trust that led to the erroneous release and reconveyance of the 4405 property. The November 3, 2008 entry reads: "Note that if Stewart Title is correct about the typographic errors, then Citi's deed of trust encumbers 4401 Price Avenue and not 4405 Price Avenue."

Coung Nguyen, Citi's attorney, testified his firm was consulted in August 2008 based upon what "Citi believed at the time was an erroneous reconveyance." Citi was hoping to proceed with a judicial foreclosure sale because it could not proceed with a nonjudicial foreclosure sale based on the erroneous reconveyance. Upon his review of Citi's documents, he concluded North Bay had made an error in releasing Citi's lien on the 4405 property. He drafted a letter to North Bay on September 12, 2008. The underwriter for North Bay, Stewart Title, sent a letter via email to Nguyen on October 13, 2008, confirming the erroneous release and reconveyance, but due to an incorrect email address, Nguyen did not receive it until the end of October. The letter was the first time he became aware that there was an erroneous legal description of the 4405 property in the deed of trust. He then passed on the information to Citi "a few days later."

Nguyen's November 3, 2008 entry in the software system used to communicate with Citi reads: "Our firm has received from Stewart Title its letter denying Citi[']s title claim, a copy of which has been uploaded to Documents. According to the denial letter, the same parcel number is actually two properties, 4401 Price Ave. and 4405 Price Ave., both encumbered by trust deeds with SCME Mortgage as the beneficiary. . . . The title problem appears to have arisen because both SCME trust deeds have typographical errors[.]" Nguyen noted it was unclear whether Aurora knew of the error. He stated: "It is not clear at this point whether Citi received any such notice from North Bay. Regardless, it appears that North Bay made an error which did not entitle it to release

4

Citi's deed of trust." Nguyen testified that the letter from Stewart Title was the first time he learned of the "second error" with the deed of trust, and it was the first time that information was conveyed to Citi.

On cross-examination, Nguyen explained based on Citi's notes, it appeared Citi knew in July 2008 there was some error in the recording of the satisfaction of the mortgage. Nguyen knew there was a problem of some kind in August 2008, but he did not know what was the problem. The release of obligation on the deed of trust for the 4405 property issued on October 15, 2007, listed the incorrect property number for the property. Nguyen testified that if he or anyone at Citi had looked at that document at the time, they could have figured out the property number was wrong.

The court issued a memorandum of decision in favor of Citi. The court found that Citi "was not on notice that the problem arose from the wrong legal descriptions being attached to the deed of title until a letter received by counsel in late October 2008." The court first observed that there is no specific statute of limitations that governs quiet title actions (citing *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 612 (*Ankoanda*)). The court found that because the underlying action was based on the mistake in the recorded documents, it was governed by a three-year statute of limitations. (Code Civ. Proc., § 338, subd. (d).) The court rejected the Yates' position that the statute began to run at the time of the recording error in 2004, because the commencement of the limitations period was subject to the discovery rule exception. The discovery rule begins to run when a party suspects or should suspect the injury or wrongdoing. When the foreclosure did not go through, "CitiMortgage had constructive notice that something was deficient in the Deed of Trust. That something turned out to be the faulty reconveyance." (Original underscoring.)~ Citi acted to solve the problem with the faulty reconveyance, but then later discovered a "second problem"—the legal description for the 4405 property actually described the 4401 property, and vice versa. The court found it was the discovery of the second problem that "restarted the clock on the statute of limitations as of October 30, 2008." Therefore, Citi's action was timely filed within three years of that date.

5

The court concluded that Citi was entitled to a judgment for reformation and quiet title. It then continued, "Though not briefed, the Court is also including with this Memorandum of Decision a further analysis under the rubric of 'Equitable Mortgage.' " The court found that by their mutual intentions, the parties created an equitable mortgage. At the time the parties filed the deed of trust for the 4405 property, they both intended a loan of $342,000. The legal description attached to the deed was for the 4401 property, which was clearly erroneous, and "the error does not release the parties from all obligations." The court concluded the parties' agreement gave rise to an equitable mortgage, even though it did not constitute a legal mortgage. The court stated there was a four-year statute of limitations that applied to mortgage actions and Citi timely filed its action. (Code Civ. Proc., § 337.)

## C. *Motion for Reconsideration*

The Yates filed a motion for reconsideration. They argued the court's alternative holding based on a theory of equitable mortgage was not briefed or argued by the parties, so they were deprived of the opportunity to litigate the issue. The Yates also contended the court incorrectly found there was a second problem with the mortgage based on an "erroneous interpretation of the evidence."

In opposition, Citi argued that the Yates failed to raise any issue based on new or different facts in their reconsideration motion. Citi contended that the equitable mortgage theory only applied to the declaratory relief cause of action and was based upon Citi's request that the court declare the mutual rights and obligations of the parties. A court sitting in equity has the authority to fashion such a decision.

The court held a hearing on the motion for reconsideration. The Yates argued that Citi's declaratory relief action did not give the court the power to render judgment on a new theory of equitable mortgage that was outside the scope of the pleadings. "An equitable mortgage is a completely alternate method of creating a security interest." The Yates had no opportunity to litigate the claim or to defend against it. Citi argued that the court sitting in equity could apply an equitable mortgage theory to support its quiet title decision.

6

After the hearing the court issued a one-page decision, which states: "The Court heard testimony and took the matter under submission. The Court now renders a decision. [¶] Defendants' Motion for Reconsideration is denied."

The court issued a judgment reforming the deed of trust and quieting title in favor of Citi. The deed of trust to the 4405 property was ordered reformed to include the proper legal description for the property. The deed was confirmed as a "valid, enforceable first position lien against" the property, and the title to the property is held by Citi. The court awarded Citi attorney fees and costs.

## III.

## DISCUSSION

### A. *Citi's Action Was Not Filed Within the Applicable Three-Year Statute of Limitations*

#### 1. Standard of Review

Resolution of the statute of limitations issue is normally a question of fact. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 (*Fox*).) "But when 'the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law. [Citation.]'. . ." (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 713, quoting *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611–612.) The question of when plaintiffs' cause of action accrued is a mixed question of law and fact. (*Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 406 (*Leaf*).)

#### 2. Statute of Limitations

"The Legislature has not established a specific statute of limitations for actions to quiet title. . . ." (*Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 476, citing *Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560.) A court must look to the underlying theory of relief to determine the applicable period of limitations. (*Salazar v. Thomas*, at p. 476.)

The trial court applied a three-year statute of limitations under Code of Civil Procedure section 338, subdivision (d).[2] "The law is clear that the theory of relief

---

[2] All subsequent statutory references are to the Code of Civil Procedure.

7

underlying an action for quiet title, in this case fraud or mistake, determines which statute of limitations applies. [Citations.]" (*Ankoanda*, *supra*, 44 Cal.App.4th at p. 615.) "A cause of action subject to section 338, subdivision (d), does not accrue 'until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'. . ." (*Ankoanda*, at p. 615, citing § 338, subd. (d); see also *Arthur v. Davis* (1981) 126 Cal.App.3d 684, 690 [applying accrual clause of statute to quiet title action].)

Neither party disputes that a three-year limitations period applies to Citi's causes of action. Rather, the Yates argue the trial court erroneously calculated the commencement of the limitations period from the date that Citi knew the deed of trust to the 4405 property described the wrong parcel (October/November 2008), when instead the court should have used the date the trustee, Five Star, was notified by North Bay of the intended reconveyance of the 4405 property (October 2007). As of October 2007, Citi became aware that the deed of trust to the 4405 property had been erroneously reconveyed after Yates defaulted on the loan for that parcel. Therefore, this awareness started the running of the statute of limitations period.

Under the delayed discovery rule, a cause of action does not accrue until the party discovered or should have discovered, through the exercise of reasonable diligence, all the facts essential to its cause of action. (*Leaf*, *supra*, 104 Cal.App.3d at p. 407.) To invoke the delayed discovery rule, the plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer. [Citations.]" (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160, original italics, superseded by statute on another ground as stated in *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 637, fn. 8.)

"[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."

8

(*Fox*, *supra*, 35 Cal.4th at p. 803.) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'. . ." (*Id.* at p. 807, citing *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 398.) The statute is not tolled until the facts are *revealed*, but only until a reasonable investigation *would have revealed* the facts. (See *Fox*, *supra*, 35 Cal.4th at p. 807.)

The trial court found that Citi knew "something" was deficient in the deed of trust, which was the faulty reconveyance, but it later discovered the reason for the faulty reconveyance was the incorrect legal description of the property. The trial court's theory was the statute of limitations did not begin to run until the discovery of the *reason* for the faulty reconveyance in October 2008.

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110, fn. omitted (*Jolly*).) Jolly's claim against manufacturers of the synthetic drug estrogen diethylstilbestrol (DES) was barred because she knew as early as 1972 that her mother had taken DES when she was pregnant, and the children of such mothers could suffer injuries. (*Id.* at p. 1107.) Jolly, however, could not determine the manufacturer of the drug which her mother took, and she believed she could not file a case without that information. (*Id.* at pp. 1107-1108.) In March 1980, the Supreme Court issued the opinion in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588, holding that an injured party could state a cause of action against all the manufacturers if she cannot identify the specific manufacturer of the DES ingested by her mother. (*Jolly*, at p. 1108.) A year later, plaintiff Jolly filed suit. (*Ibid.*) The Supreme Court held it was barred by the statute of limitations. "Because a plaintiff is under a duty to reasonably investigate and because a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period, suits are not likely to be unreasonably delayed, and those failing to act with reasonable dispatch will be barred." (*Id.* at p. 1112.)

In *Lyles v. State of California* (2007) 153 Cal.App.4th 281, 285-286 (*Lyles*), the court ruled a lawsuit was barred by a three-year statute of limitations. The plaintiffs' property had been damaged by water, mud, rocks and debris during a winter storm. The plaintiffs spoke with state and county employees and their insurance broker, and concluded the damage was due to "an act of God." (*Id.* at pp. 285-286.) They undertook no further investigation, but later learned a neighbor had won a lawsuit against the state for damage during the same storm which was caused by a clogged culvert. (*Id.* at p. 286.) The Lyles then filed a lawsuit against the state five years after the damage occurred. (*Ibid.*) The court held: "[T]he [discovery] rule is not so broad as to delay accrual indefinitely until the plaintiff stumbles upon a claim. Rather, the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him, 'wrong' being used, not in any technical sense, but rather in accordance with a lay understanding. [Citation.] Thus, under the discovery rule, the plaintiff need not be aware of the specific facts or legal theory necessary to establish the claim. [Citation.] He or she need not even know the identity of the wrongdoer. [Citation.] Rather, the plaintiff need only be aware of his or her injury and have knowledge of sufficient facts to place him or her on actual or inquiry notice that the injury has a negligent cause. [Citation.]" (*Id.* at pp. 286-287.)

*Lyles* distinguished *Leaf*. In *Leaf*, the plaintiffs sued the defendant, the City of San Mateo, for creating a subterranean water channel under their property by improperly maintaining the city's sewer trenches. (*Leaf*, *supra*, 104 Cal.App.3d at p. 404.) Plaintiffs had originally sued the developer/builder of the property based on a belief that it was responsible for the subsurface drainage problem. When the plaintiffs began excavation of the property following settlement of the lawsuit, a cave-in occurred, revealing the sewer problem. (*Id.* at p. 403.) The plaintiffs then sued the city. The Court of Appeal held that the action was not barred by the statute of limitations because plaintiffs had used reasonable diligence to discover the cause of the injury. "We see no reason to commence the running of the statute of limitations when plaintiffs, at the outset, made

10

reasonable, but unsuccessful, efforts to identify the negligent cause of damage. Where, as in this case, plaintiffs consulted with professional engineers as to the source of their injury, they were entitled to rely upon that advice. [Citation.]" (*Id.* at p. 408.) This stands in contrast to the plaintiffs in *Lyles*, who "did nothing to ascertain the cause of their storm damage." (*Lyles*, *supra*, 153 Cal.App.4th at p. 289.)

Finally, Civil Code section 19 provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." Thus, for example, in *Crabbe v. White* (1952) 113 Cal.App.2d 356 (*Crabbe*), a claim against an estate for damages due to fraud committed by the deceased many years earlier was barred because the plaintiff knew in late 1941 that the deceased's will was being probated, but did not file a claim against the deceased's estate until 1946. The plaintiff alleged that he did not examine the will until 1943. The court pointed out that " '[m]eans of knowledge, especially where it consists of public records . . . is deemed in law to be knowledge [,]' " and that " 'a mere averment of ignorance of a fact which a party might with reasonable diligence have discovered is not enough to postpone the running of the statute (citations).' " (*Id.* at p. 360.)

We conclude that the trial court erred in conceptualizing the wrong here as two separate problems: the erroneous reconveyance in October 2007 (problem one), and the later discovered error in the legal description of the property (problem two). There is, in fact, only one wrong inflicted on Citi. The "wrong" was that Citi could not foreclose on the property because a satisfaction of mortgage had been recorded in error in October 2007, and Citi knew this on July 31, 2008, *at the latest*. The cause of action accrues when the plaintiff knows something "wrong" has happened; accrual is not delayed until the plaintiff has figured out *why* the wrong happened or *who* did it. (*Lyles*, *supra*, 153 Cal.App.4th at pp. 286-287.)

The evidence showed that Citi had access to the satisfaction of mortgage since as early as October 2007. While the October 2007 letter from North Bay to Five Star stating that the obligation on 4405 property was being released was not sent directly to Citi, there

11

is evidence that Five Star informed Citi of the "Notice of Intent to Record Release of Obligation."

Even assuming the mere recording of that document would not put Citi on notice that something was amiss, Citi realized there was a "problem" during the foreclosure proceedings, in November 2007. Citi's file contains a notation dated November 23, 2007, that states: "[W]e are not able to proceed due to title is not willing to insure our file. . . . Recommend referring to an attorney for judicial foreclosure." The "problem"—which Citi discovered on or before July 31, 2008—was that it could not foreclose on its security because the satisfaction of mortgage for the property had been *erroneously* issued. Citi therefore knew by July 31, 2008, if not earlier, that there was a "wrong," and that it was due to someone's error. This plainly satisfies the test set forth in *Lyles*: "[T]he plaintiff need only be aware of his or her injury and have knowledge of sufficient facts to place him or her on actual or inquiry notice that the injury has a negligent cause. [Citation.]" (*Lyles*, *supra*, 153 Cal.App.4th at p. 287.)

These facts are different from those in *Leaf*, where the plaintiff conducted a reasonable investigation, was told by experts what the cause of the injury was, and had no reason to investigate whether there was a *second* cause by a *second* wrongdoer. "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox*, *supra*, 35 Cal.4th at p. 808.) "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] *on inquiry* ' " ' or if they have ' " '*the opportunity to obtain knowledge* from sources open to [their] investigation.' " ' [Citations.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id.* at pp. 807-808, fn. omitted, original italics.)

If Citi had made a reasonable inquiry, it would have learned (and eventually did learn) the *reason* why the wrong occurred and who did it; indeed, Citi's attorney testified that if he or Citi had just looked at the document they would have discovered it contained the wrong property description. Since the "[m]eans of knowledge, especially where it consists of public records . . . is deemed in law to be knowledge," and since the satisfaction of mortgage itself was the "means of knowledge" for Citi to learn about the erroneous property descriptions, the statute could not be tolled past July. (See *Crabbe*, *supra*, 113 Cal.App.2d at p. 360.) As noted, the rule in *Fox* holds that the statute is not tolled until the facts are revealed, but only until the plaintiff has enough information such that a reasonable investigation would have revealed the facts. (*Fox*, *supra*, 35 Cal.4th at p. 807.) Consequently the statute of limitations began to run at the latest on July 31, 2008.

These facts distinguish our case from *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, where a reconveyance was erroneously filed but the bank did not sue until after the borrower had sold the property securing the debt without paying off the note. Dintino argued the reconveyance was a matter of public record and so the bank had constructive notice. But, the court held the bank had no reason to check the public records. (*Id.* at p. 352.) The court declined to impose a "duty to continually monitor all public records" to determine if there is a cause of action for unjust enrichment or mistake. (*Id.* at p. 353; see also *Tarke v. Bingham* (1898) 123 Cal. 163, 166 [the defendant raised a statute of limitations defense where the terms of a promissory note were incorrectly copied into a mortgage because both documents were public record and continually available to the lender to examine, but the court rejected the defense, concluding "[n]othing had occurred to excite his suspicion, or to put him upon inquiry"].) Here, Citi perhaps had no reason to examine the satisfaction of mortgage that was recorded in October 2007, but a duty to investigate was triggered when it discovered the satisfaction had been erroneously filed against its security. "When a suspicion exists, the plaintiff must go find the facts; he or she cannot wait for the facts to find him or her. [Citations.]"

13

(*San Francisco Unified School Dist. v. W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318, 1327.)

The trial court's theory that when Citi learned about the faulty reconveyance it "duly acted on that problem and reasonably believed they had solved it" is not supported by the evidence. Citi's records show that it referred the matter to research and litigation for a "title issue" on July 31, 2008, noting that the "satisfaction of mortgage was recorded in error in October 2007 by the lender that originated the loan." Citi's September 2008 demand letter to North Bay also did not "solve the problem." Moreover, Citi had a duty to conduct *its own* investigation to determine the cause of the problem. (*Fox*, *supra*, 35 Cal.4th at p. 807.) "[A] mere averment of ignorance of a fact which a party might with reasonable diligence have discovered is not enough to postpone the running of the statute (citations)." (*Crabbe*, *supra*, 113 Cal.App.2d at p. 360.)

In summary, Citi knew in November 2007 that it had a problem with its foreclosure proceedings. Citi knew in July 2008 the problem was due to an erroneous issuance of a satisfaction of mortgage. Citi's attorney testified that a review of the satisfaction of mortgage would have informed Citi of how the error occurred. In fact, Citi's actual investigation ultimately unearthed that information within a month of its initial communication to North Bay. Since the "wrong" commenced in November 2007, and the duty to make a reasonable investigation was triggered by the information Citi had in July 2008, the cause of action accrued no later than July. Thus, Citi's complaint filed in September 2011 was outside the three-year statute of limitations.

**B.** *Motion for Reconsideration on the Court's Equitable Mortgage Theory*

The Yates filed a motion for reconsideration arguing the trial court improperly raised a new theory of equitable mortgage after trial. The Yates contend on appeal that the equitable mortgage theory was not pleaded, briefed, or argued and therefore, they had no opportunity to defend against this theory at trial. The Yates are correct that the court could not properly render judgment on an equitable mortgage theory without providing them the opportunity to defend against it.

14

A judge may rely on a new legal theory not raised by the parties, but "fairness requires . . . that the new theory, which the judge decides is the correct one, be disclosed to the opposing party so that he may have a full opportunity to meet it." (*Sand v. Concrete Service Co.* (1959) 176 Cal.App.2d 169, 172 (*Sand*).) In *Sand*, this court stated: "The trial judge should be more than an umpire deciding which party has succeeded under the ground rules fixed by opposing counsel for the playing of a game. If he reaches the conclusion from the evidence that an attorney for one party has misconceived the basic rights of his client under the facts which he finds to be true he has not only the right, but the duty, to decide the case in accordance with such findings." (*Ibid.*) The Court of Appeal concluded that if the trial court had entered judgment on a theory not disclosed to the parties and which they could not address, then there could be prejudice to the parties. But where the court set aside its findings and allowed the parties to introduce additional evidence on the new theory there is no prejudice. (*Ibid.*; see also *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1611-1612.)

In *Baker v. City of Palo Alto* (1961) 190 Cal.App.2d 744, 755-756, the appellant argued the trial court abused its discretion in setting aside the submission of the case in order to allow respondents to submit new evidence on a theory conceived by the court. The Court of Appeal held: "A court is not caught in the legal strait jacket of a particular legal theory and unable to permit a party to present evidence upon another theory which supports his case." The procedure was proper because the court permitted a full presentation of the relevant facts by both sides. (*Ibid.*)

Here, the trial court could properly raise the equitable mortgage theory, but it also had to provide the parties the opportunity to present relevant evidence and argue the issue. It was prejudicial to the Yates for the court to raise the new theory after trial in its memorandum of decision. While the court did allow argument on the issue after it was raised in the Yates motion for reconsideration, the Yates were not given the opportunity to present evidence or defend against the equitable mortgage theory. Also, the Yates assert that although the court found a four-year statute of limitations applied to an equitable mortgage claim (see § 337), the delayed discovery rule would not apply.

We need not decide the merits of the Yates' defense on appeal because we reverse and remand the case to the trial court. The trial court should provide Citi the opportunity to plead an equitable mortgage theory, allow the presentation of evidence by both parties, and provide the Yates an opportunity to present any relevant defenses.

## IV.

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court for further proceedings consistent with this decision.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.